EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Myrna Vincenti Damiani en representación de su hija menor<br><br>    Peticionaria<br><br>            v.<br><br>Jorge Y. Saldaña Acha y otros<br><br>    Recurrido | Certiorari<br><br>2002 TSPR 66<br><br>156 DPR _____ |

Número del Caso: CC-1999-132


Fecha: 16/mayo/2002


Tribunal de Circuito de Apelaciones:
                    Circuito Regional VII


Juez Ponente:
                    Hon. José L. Miranda de Hostos



Oficina del Procurador General:
                        Lcda. Wanda I. Simons García
                        Procuradora General Auxiliar


Abogados de la Parte Recurrida:
                        Lcdo. Lino J. Saldaña
                        Lcdo. Héctor Saldaña Egozcue



Materia: Filiación

        Este documento constituye un documento oficial del Tribunal
    Supremo que está sujeto a los cambios y correcciones del proceso
    de compilación y publicación oficial de las decisiones del
    Tribunal. Su distribución electrónica se hace como un servicio
    público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Myrna Vincenti Damiani
en representación de su
hija menor

    Peticionaria

                                  CC-1999-132

       v.

Jorge Y. Saldaña Acha y otros

    Recurrido

Opinión del Tribunal de la Juez Asociada señora NAVEIRA DE RODÓN.

San Juan, Puerto Rico a 16 de mayo de 2002

> *[El Derecho] en su función normativa y remedial [...] atiende y tutela necesidades, problemas y experiencias del ser humano. Éste, como autor y receptor de la ley, le nutre e inyecta en gran medida, a las soluciones que provee, su conocimiento y juicio valorativo ideológico, moral y económico.* **[N]o es enemig[o] [...] de la verdad científica. [Ambos] son entera y perfectamente reconciliables. [L]a realidad científica, al igual que los factores sociales contemporáneos que circundan la vida del derecho [....] no pueden ser descartados por los tribunales en abono de un estado negatorio de la realidad de las cosas o de la personalidad humana.** Moreno Álamo v. Moreno Jiménez, 112 D.P.R. 376, 377 (1982). (Énfasis nuestros y cita omitida.)

En virtud de los principios expuestos, aclaramos el alcance de la presunción controvertible de paternidad en los procedimientos de filiación y alimentos de la Regla 82(C) de Evidencia, 32 L.P.R.A. Ap. IV. En particular, armonizamos el derecho que tiene el padre putativo a rebatir la mencionada presunción sin frustrar o menoscabar el interés público que impera en nuestro ordenamiento de que los hijos nacidos fuera de matrimonio sean reconocidos por sus padres biológicos.

A continuación un resumen de los hechos pertinentes al asunto que hoy nos ocupa.

I

El 6 de junio de 1996, la Sra. Myrna Vincenti Damiani (en adelante, la señora Vincenti) presentó ante el Tribunal de Primera Instancia, Sala Superior de Fajardo, una **demanda jurada** mediante la cual alegó que el Sr. Jorge Y. Saldaña (en adelante el señor Saldaña) era el padre de su hija de 17 años de edad.[1]

En dicha acción solicitó que: (1) se decretara la paternidad del señor Saldaña; (2) se ordenara a las partes someterse a pruebas genéticas en caso de que el señor Saldaña se negase a reconocer voluntariamente a la menor; y (3) se impusiera una pensión alimentaria de $2,000 mensuales a favor de la menor, más la suma de $250,000 por concepto de pensiones atrasadas.[2]

---

[1] Conforme surge de los documentos que obran en autos, la joven nació en marzo de 1979 y, a la fecha de la acción, contaba con diecisiete (17) años de edad.

[2] En la demanda jurada la señora Vincenti expresó que:

> [l]as relaciones entre ambos [señora Vincenti y señor Saldaña] se iniciaron para 1974 y se nutrían a través de una red de actividades sociales;

> [p]ara el año 1975 [el señor] Saldaña alquil[ó] un apartamento en el Condominio Girasol en Isla Verde donde ubicó con la demandante y posteriormente trasladaron sus actividades relacionadas con la vida extra marital al Condominio ESJ Tower, también en Isla Verde y al Condominio Parklane, en la Calle Santiago Iglesias en el Condado;

> [p]roducto de las relaciones extra maritales del demandado Saldaña con la demandante Vincenti nació [la niña] el 18 de marzo de 1979 en el Hospital Municipal ubicado en el Centro Médico;

Entablada la acción judicial, el tribunal de instancia designó a la Procuradora Especial de Relaciones de Familia como defensora judicial de la menor.[3] A solicitud de ésta, dicho tribunal fijó fecha para que las partes se sometieran a los exámenes genéticos, conforme dispone la Regla 82(C) de Evidencia, 32 L.P.R.A. Ap. IV (en adelante Regla 82(C)).

Posterior a esta orden el señor Saldaña contestó la demanda. En esencia, adujo que, como resultado de una vasectomía a la que fuera sometido en 1977, era incapaz de procrear. Por consiguiente, entendía que la menor, nacida en 1979, no era su hija.[4]

---

[p]ara marzo de 1979, configurándose el nacimiento de [la niña] el codemandado Saldaña rompió abruptamente las relaciones con la demandante y desde ese mismo momento se negó a reconocer a su hija;

[l]a demandante inició entonces un tracto que no ha terminado aún, intentando lograr el reconocimiento para su hija por parte de su padre. Éste obstaculizó tal reconocimiento mediante múltiples subterfugios que incluyeron recursos legales reales o ficticios, ofrecimientos a la demandante para que entregase [a] la niña en adopción y finalmente el desplazamiento del demandado al Estado de la Florida en temporadas inicialmente ocasionales y posteriormente frecuentes;

[p]ara borrar su posible vinculación con la niña [...] el demandado llevó a cabo múltiples gestiones que han incluido certificados médicos, registros de hospital, nuevo matrimonio, nuevos testimonios, todos ellos diseñados con el propósito de burlar y frustrar el reconocimiento de su hija;

... independientemente de lo anterior, el padre de la menor [...] es Jorge Y. Saldaña Acha y que como tal viene obligado a reconocerla como hija y heredera legítima, así como a suministrarle una pensión alimenticia atrasada, que afirmativamente se reclama y que no debe ser menor de la suma de doscientos cincuenta mil dólares ($250,000). La pensión mensual prospectiva reclamada asciende a la suma de dos mil dólares mensuales ($2,000) y;

[l]a menor[,] representada por su señora madre en este acto[,] está dispuesta a someterse a toda y cualquier prueba con el propósito de que se corroboren sus alegaciones y el hecho cierto de la paternidad de Jorge Y. Saldaña Acha.

[3] El propósito de esta designación fue proteger adecuadamente los intereses de la menor.

[4] Es necesario puntualizar que cuando el foro de instancia ordenó a las partes a que se sometieran a las pruebas genéticas, el señor Saldaña ni siquiera había presentado la contestación a la demanda. Tampoco presentó evidencia médica de la alegada operación de vasectomía.

En cuanto a las pruebas genéticas presentó una "Moción Sobre Pruebas de D.N.A." en la que argumentó que ordenar a las partes a someterse a las pruebas genéticas, sin la previa celebración de una vista, violaba el debido proceso de ley.

El foro de instancia denegó la moción y expresó que celebraría la vista evidenciaria solicitada con posterioridad al recibo de los resultados de las pruebas genéticas. En consecuencia, mantuvo vigente su orden "so pena de desacato."

De dicha determinación, el señor Saldaña acudió al Tribunal de Circuito de Apelaciones (en adelante, Tribunal de Circuito) y luego al Tribunal Supremo con sendos recursos de certiorari acompañados de mociones en auxilio de jurisdicción.[5] Tanto el Tribunal de Circuito como el Tribunal Supremo denegaron los recursos.[6]

Así las cosas y tras continuos incidentes, todos relacionados con **la reiterada negativa del señor Saldaña a someterse a las pruebas genéticas de D.N.A.**, el tribunal de instancia consideró probados los hechos alegados en la demanda jurada de filiación. En virtud de ello, a tenor con Regla 82(C) de Evidencia, y la Sec. V, Art. 11 de la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como la Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 510 (Exámenes genéticos) (en adelante Ley de Sustento de Menores), dictó sentencia mediante la cual declaró con lugar la acción de filiación y fijó a favor de la menor una pensión alimentaria provisional de mil quinientos dólares ($1,500) mensuales. El tribunal le impuso además cuatro mil dólares ($4,000) por concepto de honorarios de abogado.[7]

---

[5]   A la fecha en la que el señor Saldaña solicitó al Tribunal de Circuito de Apelaciones la paralización de la orden del foro de instancia, ya había expirado el término concedido por ese foro mediante Resolución de 13 de abril de 1998, para efectuarse la pruebas genéticas.

[6]   En su resolución el Tribunal de Circuito expresó lo siguiente: "[a]tendido este argumento principal y examinada la petición presentada, debemos concluir que en las circunstancias del caso ante nos, no debemos expedir el auto solicitado."

Inconforme, el señor Saldaña acudió al Tribunal de Circuito mediante recurso de apelación. En dicho escrito alegó que erró el foro de instancia: (i) al fundamentar su dictamen en la Ley Especial de Sustento de Menores, siendo ésta inaplicable; (ii) al adjudicar la paternidad sin permitirle rebatir la presunción controvertible que establece la Regla 82(C) mediante la celebración de una vista evidenciaria y; (iii) al imponerle una pensión alimentaria provisional.

El 14 de enero de 1999, el Tribunal de Circuito dictó sentencia y revocó la decisión del Tribunal de Primera Instancia. Resolvió que la presunción incontrovertible de paternidad de la Sec. V, Art. 11 de la Ley de Sustento de Menores, supra, 8 L.P.R.A. sec. 510 (Exámenes genéticos), aplicaba sólo

---

[7] Para ilustrar cuán arduo y doloroso ha sido el trámite de filiación para esta joven y la madre en este caso, citamos las expresiones emitidas por el foro de instancia en su sentencia.

> Dentro de un marco de múltiples e intensos incidentes procesales este tribunal, luego de ponderar las posiciones de las partes y a solicitud de la Procuradora emitió en dos ocasiones la orden para que las partes se sometieran a las pruebas de D.N.A. Ello de conformidad con la Regla 82(c) [sic] de las de Evidencia, 32 L.P.R.A. Ap. IV. La primera orden se emitió el 8 de diciembre de 1997 y se fijó la fecha de examen para el 27 de enero de 1998, pero se dejó en suspenso posteriormente hasta tanto el demandado agotara los remedios por él presentados ante el más alto foro; y que replicara a la petición de la procuradora. La segunda orden se emitió el 26 de mayo de 1998 y se fijó la fecha para el 30 de junio de 1998; disponiendo un mandato expreso y claro.

> Antes del vencimiento de esa fecha el Tribunal de Circuito resolvió la contención del demandado y sostuvo al tribunal.

> En lugar de acudir a cumplir la orden, el demandado adujo mediante moción presentada a este Tribunal que se proponía ir al Tribunal Supremo y en consecuencia solicitó que dejáramos sin efecto nuestra orden, lo cual no hicimos.

> El demandado, motu proprio, dio por suspendida nuestra orden e incumplió con la misma, en abierto menosprecio a la determinación del tribunal.

> Nada de ello persuadió la temeridad del demandado, quien ha sostenido varias tácticas procesales dilatorias, consumiendo alrededor de dos años en el presente pleito y posponiendo la identidad de un[a] menor que lleva diecinueve años de incertidumbre.

a aquellos casos originados en procedimientos administrativos. Señaló que por el caso de autos haber comenzado en el foro judicial, le resultaba aplicable sólo lo dispuesto en la Regla 82(C) de Evidencia. También resolvió que al ser la presunción de dicha Regla una controvertible, el padre putativo tenía el derecho a presentar prueba en contrario. En consecuencia, devolvió el caso al foro de instancia para que éste celebrara una vista evidenciaria.

Finalmente, dispuso que, al no existir evidencia clara y convincente sobre la alegada paternidad no procedía imponerle al señor Saldaña una pensión alimentaria provisional.

Inconforme, el Procurador General, en representación de la Procuradora de Familia, acudió ante nos con los siguientes señalamientos:

> Erró el Tribunal de Circuito de Apelaciones al revocar la adjudicación de paternidad formulada por el foro de instancia.

> Erró el Tribunal de Circuito de Apelaciones al dejar sin efecto la pensión alimentaria provisional ordenada por el foro de instancia.[8]

Mediante Resolución de 19 de mayo de 1999 expedimos el auto de certiorari y mantuvimos vigente los alimentos provisionales dispuestos por el Tribunal de Primera Instancia hasta que otra cosa se dispusiera.[9] Con el beneficio de los alegatos de las partes procedemos a resolver.

Antes de entrar a discutir el asunto que nos ocupa, explicamos brevemente por qué la presunción incontrovertible de paternidad de la Sec. V, Art. 11 de la Ley de Sustento de Menores, supra, 8 L.P.R.A. sec. 510 (Exámenes genéticos) es inaplicable al caso de autos. Veamos.


II

La Sec. V, Art. 11 de la Ley de Sustento de Menores, según enmendada; 8 L.P.R.A. sec. 510 (Exámenes genéticos), establece un procedimiento

---

[8] Por el resultado al cual llegamos, se hace innecesario discutir este segundo señalamiento de error.

[9] Ello a pesar de las múltiples comparecencias del señor Saldaña para que se le relevase de esta responsabilidad.

administrativo expedito que **se origina en la agencia administrativa** para la determinación de filiación, establecimiento y/o modificación de una pensión alimentaria.

Mediante dicho procedimiento que, como expresáramos, se tramita administrativamente, se establece una presunción incontrovertible de paternidad en aquellos casos en que un padre putativo se niega a someterse a los exámenes genéticos ordenados por el Administrador o el Juez Administrativo.

Sobre el particular, dicha Sec. V dispone, en lo pertinente, lo siguiente:

> *Exámenes genéticos*. En cualquier acción en la que la paternidad sea un hecho pertinente, el Administrador o el Juez Administrativo podrá a iniciativa propia, o a moción de parte oportunamente presentada, ordenar a la madre, hijo o hija y al alegado padre biológico a someterse a exámenes genéticos.
>
> **Se presumirá incontrovertible la paternidad en aquellos casos en que un padre putativo se negare a someterse al examen genético ordenado por el Administrador o el Juez Administrativo**. (Énfasis nuestro.)

A tenor con lo antes expuesto es forzoso concluir que esta sección es inaplicable al caso que nos ocupa ya que éste se originó en el foro judicial y no en la agencia administrativa. Por consiguiente, no erró el Tribunal de Circuito al revocar al Tribunal de Primera Instancia en cuanto a este particular.

Lo anterior, sin embargo, no dispone de la controversia. Como expresáramos al inicio, debemos armonizar el derecho que tiene el alegado padre a rebatir la presunción establecida en la Regla 82(C) con el derecho que por ley tienen los hijos habidos fuera del matrimonio a ser reconocidos. No obstante, primero debemos auscultar, a la luz de sus disposiciones y la exposición de motivos, cuál es el fin último que persigue la Regla 82(C). Comenzaremos nuestro análisis examinando brevemente algunos principios de hermenéutica legal. Veamos.

III

El legislador, al aprobar una ley, persigue como fin el **"tratar de corregir un mal, alterar una situación existente, completar una reglamentación vigente,**

**fomentar algún bien específico o el bienestar general, reconocer o proteger un derecho, crear una política pública o formular un plan de gobierno.**" (Énfasis nuestro.) R. E. Bernier y J. A. Cuevas Segarra, <u>Aprobación e interpretación de la leyes en Puerto Rico</u>, 2da ed. rev., Publicaciones JTS, 1987, Vol. 1, págs. 245-246. Por consiguiente, al dilucidar una controversia y adjudicar los derechos de las partes, los tribunales "**deben interpretar las leyes aplicables a la situación de hechos que tienen ante sí, de forma que se cumpla cabalmente con la intención legislativa.**" Bernier y Cuevas Segarra, supra, pág. 241.

La intención legislativa puede ser indagada a través del análisis del historial legislativo. Si la ley tiene una exposición de motivos, ésta generalmente recoge el propósito que inspiró su creación. No obstante, en aquellos casos en los cuales la ley carece de una exposición de motivos o, cuando aún teniéndola, no contiene la intención legislativa, es útil consultar otros documentos tales como los informes de las comisiones que estudiaron el proyecto de ley y los debates celebrados cuando la medida fue discutida en el hemiciclo, según aparece en el Diario de Sesiones. De igual manera, se pueden utilizar los anteproyectos y los informes alrededor de los mismos que son preparados fuera de la Asamblea Legislativa, cuando ésta los tuvo ante sí y adoptó sustancialmente los anteproyectos. Bernier y Cuevas Segarra, supra, pág. 243.

Con este marco doctrinal, analicemos pues la controversia ante nuestra consideración.

IV

La Regla 82(C) de Evidencia, 32 L.P.R.A. Ap. IV, dispone en esencia que:

> *[e]n cualquier acción en que la paternidad sea un hecho pertinente, el tribunal podrá a iniciativa propia, o deberá, a moción de parte oportunamente presentada, ordenar a la madre, hijo o hija y al presunto padre [...] biológico a someterse a exámenes genéticos.*
>
> ***Se presumirá controvertiblemente la paternidad en aquellos casos en que un padre putativo [...] se negare a***

*someterse al examen genético ordenado por el tribunal.* [10]
(Énfasis nuestro.)

Por su parte, la Exposición de Motivos de la Ley Núm. 10 de 16 de julio de 1990, que enmendó el inciso C de la Regla 82 de Evidencia explica, en lo aquí pertinente, lo siguiente:

> **La política pública del Estado Libre Asociado de Puerto Rico de que los padres legalmente obligados asuman la responsabilidad que tienen para con sus hijos queda trunca cuando en los casos de menores nacidos de <u>relaciones extramaritales</u> no se establece la paternidad.**
>
> **Con frecuencia las acciones para establecer la paternidad se dilatan y complican por no haber procedimientos específicos y expeditos en auxilio de los juzgadores para hacer esa determinación. <u>Es el propósito de esta ley agilizar el establecimiento de la paternidad reduciendo el elemento adversativo que prevalece en el procedimiento vigente. El someterse o no a un examen genético produce mayormente la dilación de estos casos que se genera por las vistas, oposiciones, suspensiones y otros incidentes procesales tácticamente dilatorios. El propósito de esta ley es hacer mandatorio para el tribunal requerir a todas las partes en la controversia que se sometan a ese tipo de examen, de mediar moción de parte oportunamente presentada con ese propósito.</u> Esto contribuirá a reducir la dilación en estos casos al agilizar el establecimiento de la paternidad.** Es claro que esta ley no pretende adjudicar el valor probatorio que puedan tener estos exámenes. Tampoco intenta menoscabar la facultad judicial de aquilatar el resultado de éstos, si se ha guardado las garantías procesales en la custodia e identificación de las pruebas **y si se han observados otras salvaguardas de la integridad del proceso.** (Énfasis suplido.)

Como surge claramente de las disposiciones antes citadas, la legislación responde al problema apremiante que el Estado confrontaba y aún confronta en los procesos de filiación. Es en virtud de lo anterior que éste reconoce que las pruebas genéticas resultan ser la alternativa más efectiva para determinar con **<u>certeza</u>** y **<u>prontitud</u>** el hecho de la paternidad o no paternidad. Y, **de resultar cierto el hecho de la paternidad**, poder obligar al padre biológico a velar por sus hijos y proveerles alimentos irrespectivamente de las circunstancias de su nacimiento, esto, además de evitar que su interés apremiante en los casos de

---

[10] La Ley Núm. 121 de 21 de julio de 1988 enmendó la Regla 82 de Evidencia, 32 L.P.R.A. Ap. IV para añadir los incisos (C) y (D).

filiación quede frustrado.  Véanse, <u>Chévere</u> v. <u>Levis</u>, Op. de 15 de marzo de 2000, 2000 JTS 56, 850 y <u>Soto Cabral</u> v. <u>E.L.A.</u>, 138 D.P.R. 298, 322 (1995).  Igualmente, este Tribunal, a través de su jurisprudencia, ha reconocido que las pruebas genéticas resultan ser <u>la mejor evidencia</u> en un proceso de impugnación de paternidad.  Véanse: <u>Rivera Pérez</u> v. <u>León</u>, 138 D.P.R. 839, 842 (1995); <u>Moreno Álamo</u> v. <u>Moreno Jiménez</u>, supra, y <u>Ortiz</u> v. <u>Peña</u>, 108 D.R. 458, 464 (1979).[11]

De otra parte, las Cortes federales y estatales de Estados Unidos consideran dichas pruebas una de las evidencias científicas que con mayor precisión establece la paternidad.  En <u>Augustin</u> v. <u>Marquis</u>, mediante "Memorandum Opinion & Orden", res. el 20 de octubre de 1996, 35 V.I. 9 (1996), 1996 U.S. Dist. Lexis 20813, (págs. 3-4) 1996 WL 663975 (págs. 2-3), el Tribunal de Distrito Federal para el Distrito de Islas Vírgenes por voz de la Hon. Patricia D. Steele en expresó lo siguiente:

> **In today´s paternity determination proceedings, scientific evidence, more specifically DNA or HLA [Human leukocyte antigen] testing, rank as one of the most demonstrative evidence of paternity, or lack thereof.  The preciseness and profound acceptance of DNA or HLA testing in today´s American courts is reflected in many States' paternity statutes as admissible evidence for rebutting the presumption of legitimacy in paternity proceedings**. Véanse: también, <u>Jones</u> v. <u>Robinson</u>, 329 S.E.2d 794, 798 (Va. 1985) ("...the HLA system can be used to establish a significant probability of paternity.") y <u>Buckland</u> v. <u>Commonwealth</u>, 329 S.E. 2d 803 (Va. 1985).

V

Como se puede observar, las pruebas genéticas gozan de un alto grado de confiabilidad en cualquier proceso en el que la paternidad sea un hecho pertinente.  La precisión de sus resultados hacen de éstas **la mejor evidencia** no sólo para establecer paternidad, sino también para establecer la no paternidad.  Así pues, no cabe lugar a dudas que estas pruebas, hoy por hoy, resultan ser el más seguro y mejor mecanismo para cumplir con el interés eminentemente apremiante del Estado de establecer con **certeza** y

---

[11]  En apoyo de lo anterior, en <u>Moreno Álamo</u> v. <u>Moreno Jiménez</u>, 112 D.P.R. 376, 386 (1982), utilizando como referencia a <u>Ortiz</u> v. <u>Peña</u>, 108 D.P.R. 458, 469 (1979), "refrendamos la confiabilidad de las pruebas serológicas para establecer la no paternidad y autorizamos expresamente a los tribunales del país para que discrecionalmente ordenaran exámenes de sangre en acciones 'en que la paternidad sea un hecho pertinente.'"

**prontitud el estado filiatorio de sus ciudadanos.** Es por estas razones que el legislador, a través de la Regla 82(C), permite que un tribunal (ya sea motu proprio o a solicitud de parte) ordene a la madre, hijo o hija y a un alegado padre biológico, (o a cualquier otro pariente en caso de que el presunto padre haya muerto)[12] a someterse a exámenes genéticos cuando la paternidad es un hecho pertinente. Por las mismas razones faculta al tribunal a presumir controvertiblemente la paternidad y sus consecuencias cuando el alegado padre (o pariente) no quiere someterse a dichos exámenes.

Según nuestras Reglas de Evidencia una presunción es "una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecido en la acción". Regla 13(A) de Evidencia, supra.[13] La presunción se considera controvertible cuando la ley permite presentar evidencia para destruirla o rebatirla. Es decir, cuando la ley permite "demostrar la inexistencia del hecho". Regla 13(B)de Evidencia.

En las acciones de naturaleza civil, la parte contra la cual se establece la presunción tiene la obligación de ofrecer evidencia para demostrar ante el juzgador la inexistencia del hecho presumido. Si no ofrece evidencia, el juzgador entonces deberá aceptar la existencia del mismo. Regla 14 de Evidencia, supra. Véanse, además, <u>Admor. F.S.E.</u> v. <u>Almacén Román Rosa</u>, res. 30 de junio de 2000, 151 D.P.R. ___ (2000), 2000 JTS 122, pág. 1527 y <u>Pueblo</u> v. <u>Vázquez Méndez</u>, 117 D.P.R. 170, 176 (1986).

Así pues, una presunción es un mecanismo que provee la ley para relevar a la parte que la beneficia o favorece de presentar prueba para sostener un hecho y, cuando es controvertible, es decir, cuando la ley permite presentar evidencia para demostrar que el hecho presumido no existe, la parte

---

[12]   Sobre el orden de preferencia a tenor con el grado de consanguinidad del pariente con el presunto padre, véase Regla 82(C) de Evidencia, según enmendada.

[13]   Cabe señalar que las presunciones no son evidencia, constituyen sólo maneras de tratar la evidencia. Sobre este particular en <u>Union Pacific Railroad Co. Inc.</u> v. <u>United States</u>, 524 F.2d 1343, 1382 (1975), (citado por el Prof. Chiesa en el Análisis Editorial de su obra, <u>Práctica Procesal Puertorriqueña</u>, Evidencia, Ed. JTS, pág. 43, 1979), se dispuso que

contra la cual opera la presunción tiene el peso de la prueba en cuanto a destruir dicho hecho presumido. Si no logra destruirlo, el juzgador queda obligado a inferir el hecho presumido. Cabe señalar que la Regla 14 **"persigue dar un efecto fuerte a la presunción, de modo que este mecanismo adquiera una eficacia plena en la práctica."** Chiesa, E.L., <u>Práctica Procesal Puertorriqueña, Evidencia</u>, Ed. JTS, pág. 47, 1979. **Esto significa que mientras no se destruya el hecho presumido, éste prevalece en contra de la parte promovida con todas sus consecuencias.** Ahora bien, si la destruye o controvierte, a la parte favorecida por la presunción todavía le asiste el derecho a probar el hecho que había sido presumido.

A la luz de lo antes expuesto podemos razonablemente concluir que, si bien la Regla 82(C) establece una presunción en contra del padre putativo que se niegue a someterse a los exámenes genéticos, por ser ésta controvertible, dicha presunción puede rebatirse mediante la presentación de prueba en contrario.

Por lo tanto, el señor Saldaña tenía derecho a presentar prueba para controvertir la presunción de paternidad. El Tribunal de Circuito no erró al devolver el caso al foro de instancia para que éste celebrara una vista sobre este asunto.

Ahora bien, nada impide que en el ejercicio de su discreción y al amparo de la facultad que tienen los tribunales para establecer procedimientos que conduzcan a la solución de las controversias de forma justa, rápida y económica, el foro de instancia pueda ordenar, que en la vista que se señale para controvertir la presunción de paternidad, **se dilucide todo lo relativo a esta controversia.** La economía procesal milita a favor de esta solución. Es decir, que si el demandado, señor Saldaña, logra controvertir el hecho presumido de la paternidad, en esa misma vista, las demandantes, señora Vincenti y su hija, pueden presentar evidencia para sostener el hecho presumido de la paternidad. Entonces el tribunal, ya sin el beneficio de la presunción, sopesará la evidencia sometida por las partes y determinará

---

"presumptions are not evidence, and they disappear in the face of substantive evidence tending to disprove them."

la paternidad. Para prepararse para esta vista, tanto la parte demandada como la parte demandante tendrán derecho a hacer uso de los mecanismos de descubrimiento de prueba.

VI

En nuestro ordenamiento jurídico el descubrimiento de prueba es la "médula del esfuerzo de destruir de una vez y para siempre la deportiva teoría de la justicia." Lluch v. España Service Sta., 117 D.P.R. 729, 743 (1986). (Citas omitidas.) Un sistema **amplio, liberal y bien utilizado** de descubrimiento de prueba antes del juicio facilita la tramitación de los pleitos y evita inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio. Sierra v. Tribunal Superior, 81 D.P.R. 554, 560 (1959).

Existen únicamente dos limitaciones fundamentales al descubrimiento: (1) no puede descubrirse materia privilegiada, según los privilegios que se reconocen en las Reglas de Evidencia, y (2) la materia a descubrirse tiene que ser pertinente al asunto en controversia. Regla 23.1(a) de Procedimiento Civil, 32 L.P.R.A. Ap. III. Como regla general, el concepto de pertinencia para propósitos del descubrimiento de prueba, aunque impreciso, debe ser interpretado en términos amplios. General Electric v. Concessionaries, Inc., 118 D.P.R. 32, 40 (1986). Así, para que una materia pueda ser objeto de descubrimiento, basta con que exista una posibilidad razonable de relación con el asunto en controversia. Rodríguez v. Scotiabank de P.R., 113 D.P.R. 210, 212 (1982). Ahora bien, esto no significa que el descubrimiento de prueba es una carta en blanco a utilizarse indiscriminadamente para hostigar y perturbar a una parte. Las reglas establecen el mecanismo de las órdenes protectoras con el propósito de proteger a la parte o persona con relación a la cual se utiliza el descubrimiento de "hostigamiento, perturbación u opresión, así como cualquier gasto o molestia indebida." Regla 23.2, supra. Así pues, el

tribunal, en el ejercicio de su sana discreción, puede limitar el alcance y los mecanismos a utilizarse, siempre que con ello se adelante la solución de controversias de forma rápida, justa y económica. Regla 1 de Procedimiento Civil, supra.

Finalmente, no debemos olvidar que en nuestro sistema de justicia impera un esquema de descubrimiento de prueba extrajudicial que fomenta una mayor flexibilidad y cooperación entre las partes. Cuevas Segarra J. A., Tratado de Derecho Procesal Civil, Tomo I., Ed. 2000, pág. 468.

Así pues, **como parte del descubrimiento de prueba, la señora Vincenti y su hija pueden solicitarle al tribunal que ordene a las partes someterse a las pruebas genéticas. De esta manera tendrán a su disposición dicha prueba científica que, de serles beneficiosa, constituirá su mejor evidencia sobre la paternidad**. Véanse: Moreno Álamo v. Moreno Jiménez, supra; Ortiz v. Peña, supra, y Augustin v. Marquis supra.

Ahora bien, si el alegado padre (el señor Saldaña), **como parte del descubrimiento de prueba**, se negare a obedecer la orden del tribunal de que se someta a las pruebas genéticas solicitada por la madre y la hija (la señora Vincenti y su hija) **obstaculizando así el derecho de éstas a realizar un adecuado descubrimiento de prueba y estar preparadas para la vista de paternidad**, el tribunal podrá dictar, con relación a dicha negativa, **todas aquellas órdenes o remedios que en Derecho procedan para llevar a cabo o permitir el descubrimiento de prueba y así evitar que se frustren los fines de la justicia**. Entre éstos podrá incluir el que **la paternidad se considere probada a los efectos del pleito, de conformidad con la reclamación**. Regla 34.2(b)(1) de Procedimiento Civil, supra.[14] El tribunal también tendrá amplia facultad para, ante la negativa de cumplir con sus órdenes, eliminar

_____

[14] Precisamente sobre este punto y por su pertinencia cabe destacar que el Dr. José A. Cuevas Segarra, en su obra Tratado de Derecho Civil expresa que "[e]l Tribunal Supremo de Estados Unidos sostuvo que era válida una sanción al amparo de la Regla 37(b)(2)(A) de Procedimiento Civil Federal —análoga a nuestra Regla 34.2(b)(1)— que permite considerar como probados, a los efectos del pleito, los hechos alegados que dan base a la jurisdicción sobre la persona de los demandados, **sin que se viole el debido proceso de ley**. Segarra J.A. Tratado de Derecho Procesal Civil, Tomo I., Ed. 2000, pág. 575.

alegaciones y defensas, sancionar económicamente a la parte o, a su representante legal o ambos y dictar sentencia en rebeldía.[15]

---

[15] Respecto a la negativa de obedecer una orden del tribunal en el proceso de descubrimiento de prueba, la Regla 34.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, le brinda a éste amplia facultad y discreción para imponer sanciones a la parte que se niegue injustificadamente u omite descubrir prueba. Sobre el particular dicha Regla dispone lo siguiente:

(a) *Desacato* – Si cualquier deponente rehusare prestar juramento o se negare a contestar alguna pregunta después de haber el tribunal ordenado que lo hiciere, la negativa podrá ser considerada como desacato.

(b) *Otras consecuencias* – Si una parte o un funcionario o agente administrador de una parte o una persona designada para testificar a su nombre, según disponen las Reglas 27.5 ó 28, dejare de cumplir una orden para llevar a cabo o permitir descubrimiento de prueba, incluyendo una orden bajo la Regla 34.1 y bajo la Regla 32, el tribunal podrá dictar, con relación a la negativa, todas aquellas órdenes que fueren justas, y entre ellas las siguientes:

(1) Una orden al efecto de que las materias comprendidas en las órdenes antes mencionadas o cualesquiera otros hechos designados por el tribunal, sean considerados como probados a los efectos del pleito, de conformidad con la reclamación de la parte que obtuvo la orden.

(2) Una orden negándose a permitir a la parte que incumpliere, sostener u oponerse a determinadas reclamaciones o defensas, o prohibiéndole la presentación de determinada materia en evidencia.

(3) Una orden eliminando alegaciones o parte de las mismas, o suspendiendo todos los procedimientos posteriores hasta que la orden sea acatada, o desestimando el pleito o procedimiento o cualquier parte de los mismos, o dictando una sentencia en rebeldía contra la parte que incumpliere.

(4) En lugar de cualesquiera de las anteriores órdenes o en adición a las mismas, una orden considerando como desacato al tribunal, la negativa a obedecer cualesquiera de dichas órdenes, excepto una para someterse a examen físico o mental.

(5) Cuando una parte dejare de cumplir con una orden bajo la Regla 32 requiriéndole que presente para examen a otra persona bajo su custodia, cualesquiera de la órdenes mencionadas en las cláusulas (1), (2) y (3) de este inciso, excepto que la parte que incumpliere demuestre que está impedida de presentar tal persona para examen.

(6) Una orden, bajo las condiciones que estimare justas, imponiendo a cualquier parte, testigo o abogado, una sanción económica como resultado de sus actuaciones.

(c) En lugar de cualquiera de las anteriores órdenes o en adición a la mismas, el tribunal impondrá a la parte que incumpliere la orden o al abogado

VII

"[L]a norma legal no es enemiga [...] de la verdad científica. [Ambas] [s]on entera y perfectamente reconciliables. Moreno Álamo v. Moreno Jiménez, supra, págs. 377-378. Nuestro deber es hacer **justicia** y **justicia** en los procesos de filiación es *"fortalecer el derecho de los hijos, matrimoniales o extramatrimoniales, a tener un estado filiatorio rápido, cierto, seguro y estable...[]y... proteger[los]... del fenómeno histórico de su rechazo y abandono absoluto y arbitrario por parte del padre."* (Énfasis en el original y énfasis nuestro.) Calo Morales v. Cartagena Calo, 129 D.P.R. 102, 143 (1991).

**Lo hoy resuelto armoniza perfectamente con la política pública del Estado en cuanto a los procedimientos de filiación y alimentos.**

VIII

Por los fundamentos antes expuestos, se dictará sentencia confirmando en parte y revocando en parte el dictamen del Tribunal de Circuito y se devolverá el caso para que continúen los procedimientos de forma compatible con lo aquí dispuesto. Se mantiene en vigor la pensión alimentaria provisional hasta que finalicen los procedimientos de filiación y se resuelva la solicitud de pensión alimentaria y dicha determinación advenga final y firme.

Miriam Naveira de Rodón
Juez Asociada

---

que la aconsejó, o ambos, el pago del importe de los gastos incurridos, incluyendo honorarios de abogado, a menos que el tribunal determine que existía una justificación válida para el incumplimiento o que dentro de las circunstancias, el pago de los gastos resultaría injusto.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Myrna Vincenti Damiani
en representación de su
hija menor

    Peticionaria

                              CC-1999-132

      v.

Jorge Y. Saldaña Acha y otros

    Recurrido


SENTENCIA


San Juan, Puerto Rico a 16 de mayo de 2002


      Por los fundamentos antes expuestos en la Opinión que antecede, se dicta sentencia confirmando en parte y revocando en parte el dictamen del Tribunal de Circuito de Apelaciones y se devuelve el caso para que continúen los procedimientos de forma compatible con lo aquí dispuesto. Se mantiene en vigor la pensión alimentaria provisional hasta que finalicen los procedimientos de filiación, se resuelva la solicitud de pensión alimentaria y ésta determinación advenga a ser final y firme.

      Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López disiente sin opinión escrita. El Juez Asociado señor Corrada del Río no interviene. Los Jueces Asociados señores Hernández Denton y Rivera Pérez están inhibidos.


                          Patricia Otón Olivieri
                      Secretaria del Tribunal Supremo