Opinión disidente emitida por el
Juez Asociado Señor Estrella Martínez.
Ante la presentación simultánea de una solicitud de descalificación, por alegadas violaciones al Código de Ética Profesional y una solicitud de deponer a un abogado que es miembro del mismo bufete que representa a la parte contraria, procedía pautar un análisis integral que considerara las implicaciones de la deposición en el contexto del mandato ético contenido en el Canon 22 del Código de Ética Profesional, 4 LPRAAp. IX.
Por entender que el escrutinio adoptado por este Tribunal está reñido con la economía procesal, es contrario a la tendencia jurisprudencial que la propia mayoría reconoce, debilita el alcance del Código de Ética Profesional y, más importante aún, facilita el hostigamiento entre los litigantes y la utilización de tácticas dilatorias, disiento.
I
Los hechos que originan la presente controversia surgen como consecuencia de una demanda instada por el Sr. Víctor Alvear Maldonado (señor Alvear Maldonado) contra Ernst & Young, LLP (Ernst & Young). En esta, el señor Alvear Maldonado reclamó el pago de un dinero por horas trabajadas y no compensadas.
Desde el inicio del pleito, Ernst & Young solicitó dirimir el reclamo del señor Alvear Maldonado en un proceso de arbitraje, señalando que este estaba obligado por ser em *936 pleado de la empresa. Por su parte, el señor Alvear Maldonado se opuso indicando que era socio y que no procedía ventilar su reclamo en un procedimiento de arbitraje. Sin embargo, Ernst & Young destacó que aún si fuera socio el contrato de sociedad también compelía a los socios a acudir a procedimientos de mediación y arbitraje en caso de que se presentara una disputa. A raíz de ello, sostuvo que el Tribunal de Primera Instancia carecía de jurisdicción para atender el recurso presentado.
Trabada la controversia en tomo al cargo ejercido por el señor Alvear Maldonado en la empresa, este presentó una Moción en solicitud de orden de evidencia documental; prórroga para presentar oposición al escrito radicado por la parte demandada; y solicitud de descalificación de representación legal con el propósito dual de allegar información que evidenciara su alegación y servir de vehículo para la descalificación de la representación legal de Ernst & Young. En primer lugar, argumentó que participó como socio en reuniones con abogados del bufete Fiddler, González & Rodríguez, PSC (Bufete), despacho que representa legalmente a Emst & Young. Argüyó que en estas acontecieron intercambios de información confidencial que podrían utilizarse en su contra, por lo que se había constituido un conflicto de intereses en contravención al Canon 21 del Código de Etica Profesional, 4 LPRA Ap. EX. A su vez, afirmó que en el Bufete labora el Ledo. Jorge M. Cañellas Fidalgo (licenciado Cañellas Fidalgo), quien para las fechas relevantes de su reclamo se desempeñó como socio de Ernst & Young, e indicó que se proponía citarlo como testigo. El señor Alvear Maldonado especificó que el testimonio del licenciado Cañellas Fidalgo versaría sobre el cargo que ocupaba en la empresa y contribuiría a la dilucidación de la controversia. Por ende, señaló que se consuma una violación al Canon 22 del referido Código de Ética Profesional, supra.
Luego de celebrar una vista, el foro primario concluyó que no procedía la descalificación del Bufete al amparo del *937 Canon 21, supra, porque no existía prueba suficiente para sostener la existencia de intereses encontrados. Empero, no atendió el reclamo a base del referido Canon 22 hasta que finalizara el descubrimiento de prueba.
A tenor con la Resolución emitida por el tribunal de instancia, el señor Alvear Maldonado cursó a Ernst & Young una Solicitud de producción de documentos y requerimiento de admisiones. Ernst & Young la objetó. Con el fin de disipar sus diferencias, las partes pactaron una producción limitada de documentos. Además, Ernst & Young estipuló que el señor Alvear Maldonado era socio de la empresa.
A pesar de lo pactado, Ernst & Young incumplió al no producir la evidencia acordada. Como consecuencia, el señor Alvear Maldonado reiteró su solicitud de descalificación. Señaló que el descubrimiento de prueba parcial obtenido demostraba que el licenciado Cañellas Fidalgo y él ejercieron como socios durante el periodo por el cual reclama y afirmó que su intención de incluir al licenciado como testigo en el pleito quedaba sustentada.
Ernst & Young replicó la solicitud presentada y argüyó que el descubrimiento de prueba cursado era sumamente oneroso, que la solicitud presentada no justificaba la comparecencia del licenciado como testigo, que no se había establecido que el testimonio a ofrecerse fuese contrario a los intereses de Emst & Young y que, a raíz de que se estipuló que el señor Alvear Maldonado era socio, el asunto se había tomado académico. Asimismo, admitió haber concertado un acuerdo en el que se comprometió a entregar al señor Alvear Maldonado ciertos documentos.
Atendido el asunto, el foro primario determinó que cualquier testimonio para establecer que el señor Alvear Maídonado era socio se había tomado académico. Ante este dicta-men, el señor Alvear Maldonado resaltó que el testimonio del licenciado Cañellas Fidalgo es indispensable para establecer sus reclamos y que posee un efecto pernicioso para Ernst & Young. Alegó que con el testimonio se demostraría *938 que, como socio, no procedía dilucidar su controversia en un proceso de arbitraje y para demostrar la falsedad de los reclamos de Emst & Young. Así, solicitó al foro primario que decretara la continuación, y eventual culminación, del descubrimiento de prueba ordenado y concediera la deposición del licenciado Cañellas Fidalgo.
Luego de varios trámites procesales, el Tribunal de Primera Instancia concedió un término para efectuar una or-den de citación con miras a deponer al licenciado Cañellas Fidalgo. Ante ello, el señor Alvear Maldonado presentó un Escrito notificando temas que serán cubiertos durante la deposición del Ledo. Jorge Cañellas Fidalgo y documentos que deberán ser entregados previo a la misma. Emst & Young se opuso enérgicamente por entender que la información que se pretende obtener al deponer al licenciado Cañellas Fidalgo no era indispensable y podía ser obtenida empleando medios altemos.
Considerado el hecho de que no se cumplió con el descubrimiento de prueba acordado y la prueba obtenida por el señor Alvear Maldonado, el Tribunal de Primera Instancia autorizó la deposición concluyendo que los temas señalados resultaban pertinentes a la controversia y ordenó la producción de los documentos acordados.
Inconforme, Ernst & Young acudió ante el Tribunal de Apelaciones. El foro intermedio denegó el auto solicitado. Así las cosas, Ernst & Young presentó un recurso de certiorari ante este Tribunal y cuestionó, en síntesis, que se permitiera la deposición del licenciado Cañellas Fidalgo. Particularmente, señaló que la orden de deposición debió examinarse en el contexto de una adjudicación de solicitud de descalificación puesto que se habrá de llamar como testigo en el caso a un abogado miembro del Bufete que lo representa. Véase Alegato de la parte peticionaria, pág. 8.
Trabada la controversia y expedido el caso, establecemos nuestra posición para adjudicar la polémica ante esta Curia.
*939 II
Nuestro ordenamiento procesal civil consagra una multiplicidad de normas dirigidas a establecer un procedimiento a través del cual las personas, naturales o jurídicas, puedan dirimir sus controversias ante un foro judicial. Particularmente, se han esgrimido normas destinadas a regular los contornos del procedimiento de descubrimiento de prueba con el fin de colocar a las partes en posición de sustentar sus alegaciones, facilitar la obtención de la evidencia y la búsqueda de la verdad, y evitar sorpresas e inconvenientes durante la tramitación de un juicio. Alvarado v. Alemañy, 157 DPR 672 (2002); Vincenti v. Saldaña, 157 DPR 37 (2002); Alfonso Brú v. Trane Export, Inc., 155 DPR 158 (2001). Cónsono con este propósito, se ha promulgado la creación y el desarrollo de un descubrimiento de prueba caracterizado por su flexibilidad y liberalidad, y dirigido a asegurar un procedimiento justo y equitativo que responda a las particularidades y complejidades de cada caso. SLG Valencia v. García García, 187 DPR 283 (2012); Vincenti v. Saldaña, supra; Alfonso Brú v. Trane Export, Inc., supra.
La liberalidad propia del descubrimiento de prueba ha incentivado la implantación de mecanismos que fomentan el intercambio rápido y efectivo de la evidencia en un juicio. En consecución de lo expuesto, el ordenamiento avala la creación de pactos entre las partes para concertar las particularidades del proceso de descubrimiento de prueba. Estos pactos posibilitan un sistema caracterizado por la cooperación, constituyen acuerdos válidos, vinculantes y exigibles e instauran el deber inexorable de cumplir. Vellón v. Squibb Mfg., Inc., 117 DPR 838 (1986); Lluch v. España Service Sta., 117 DPR 729 (1986); J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., Publicaciones JTS, 2011, T. III, pág. 926. De este modo, el con *940 sentimiento mutuo de las partes puede alterar el procedimiento ordinario de descubrimiento en la medida en que esta modificación no se encuentre proscrita por el ordenamiento vigente. Vellón v. Squibb Mfg., Inc., supra.
A pesar de la liberalidad que caracteriza al descubrimiento de prueba, se han erigido estatutaria y jurisprudencialmente criterios que delimitan su alcance con el fin de evitar que el procedimiento se torne opresivo, intolerante o que cause molestias indebidas a las partes. Vincenti v. Saldaña, supra; Cuevas Segarra, op. cit.
De ordinario, el ordenamiento ha condicionado el alcance del descubrimiento de prueba a dos aspectos medulares, a saber: (1) información que no constituye materia privilegiada en lo que respecta a los privilegios reconocidos y (2) materia pertinente al asunto en controversia. Empero, existen limitaciones adicionales que versan sobre rasgos del descubrimiento de prueba que han surgido como corolario de la facultad judicial de restringir el amplio ámbito reconocido al procedimiento.
Sobre este particular, y en lo que atañe al asunto ante nuestra consideración, este Tribunal dirimió cuándo pro-cede la toma de deposición de un abogado de una parte. En Ades v. Zalman, 115 DPR 514 (1984), tuvimos la oportunidad de expresarnos en torno a la peculiar situación que acaecía al solicitar un descubrimiento destinado a la representación legal de una parte en el litigio. Aunque nuestro ordenamiento reconoce la posibilidad de dirigir el descubrimiento de prueba a cualquier persona, era meritorio considerar la relación existente entre un abogado y su cliente, como su asesor clave y confidente, y los deberes éticos que se imponen a esta relación en aras de evitar que un abogado sea parte o se incorpore como elemento probatorio. Ello pues, “[e]l mero hecho de que una persona sea abogado, no opera ipso facto como un escudo que impide que se le tome una deposición”. Cuevas Segarra, op. cit., pág. 851. *941 Ante tal situación, y conscientes de los riesgos que presentaba conceder un poder irrestricto de deponer a la representación legal de la parte contraria, emprendimos un análisis enmarcado en la consideración justa de los intereses encontrados, a fin de determinar bajo qué circunstancias debía proceder el reconocimiento de tal deposición.
En ese balance de intereses, este Tribunal consideró el derecho de una parte a llevar a cabo un descubrimiento de prueba amplio en lo que respecta a quién puede ser depuesto vis a vis la relación abogado-cliente. En aquella ocasión enfatizamos que la relación abogado-cliente es una correspondencia permeada de confianza e involucra un alto grado de celo y secreto profesional. Tan importante es esta relación para el ordenamiento, que se promueve la renuncia de un abogado como parte de la representación legal cuando este se encuentra en posición de ser llamado a declarar, a menos que su testimonio verse sobre asuntos meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes. 4 LPRAAp. IX, C. 22. De otra parte, el derecho a descubrir prueba intenta proveer a los litigantes las herramientas necesarias para sustentar su postura y asegurar la tramitación eficiente de un pleito.
Efectuando el aludido balance, reconocimos el derecho limitado de realizar un descubrimiento de prueba al representante legal de una parte en el pleito y descartamos la noción errada de que una orden a esos fines era improcedente. No obstante, establecimos que para deponer al abogado de una parte es necesario que se establezca justa causa. Como elemento determinante de la justa causa, los tribunales debemos dirimir si la información que se pretende descubrir al deponer al abogado de la parte contraria puede obtenerse por medios menos onerosos y complejos. Ades v. Zalman, supra, pág. 524. Así, si existen otras fuentes satisfactorias para obtener la infor *942 mación, se debe prescindir de deponer al abogado. Estos requisitos exigen un estricto y ponderado escrutinio.
A pesar de que se ha validado la toma de deposiciones al representante legal de una parte en el pleito, la controversia en el caso de autos no puede resolverse aplicando aisladamente la norma plasmada en Ades v. Zalman, supra, porque la situación actual versa sobre la toma de deposición de un abogado que, sin ser parte de la representación legal en el pleito, es miembro del bufete que sí lo es y en la que ha mediado una solicitud de descalificación de representación legal. Asimismo, la información que se pretende descubrir no está protegida por el producto del trabajo del abogado 0work product), como ocurrió en Ades v. Zalman, supra. Por el contrario, en el caso ante nos, el descubrimiento solicitado está dirigido a esclarecer los hechos que dan lugar a la reclamación del señor Alvear Maldonado, el tipo de funciones realizadas, sus responsabilidades y la contratación aplicable, entre otros hechos, durante su desempeño como socio.
Como corolario, el escrutinio desarrollado en Ades v. Zalman, supra, resulta incompleto debido a que no se consideró las implicaciones y efectos nocivos que conllevaría la toma de deposición cuando media una solicitud de descalificación de la representación legal por una posible violación al Canon 22 del Código de Etica Profesional, supra, ya que se pretende usar al abogado miembro de la firma como testigo.
III
Ante esto, es menester examinar las normas de nuestro ordenamiento jurídico que regulan el ámbito disciplinario y la descalificación. A esos efectos, debemos considerar la normativa en torno a la descalificación y las disposiciones del Canon 22 del Código de Etica Profesional, supra, que versan sobre la descalificación de la representación legal en un pleito. Veamos.
Como es sabido, el poder de reglamentar la admisión al *943 ejercicio de la abogacía y el de suspender o separar de la profesión le corresponde exclusivamente a este Tribunal. Warner Lambert v. F.S.E., 111 DPR 842 (1982). Es este Foro el que posee la facultad para entender en toda acción disciplinaria contra un abogado por conducta impropia violatoria del Código de Etica Profesional. K-Mart Corp. v. Walgreens of P.R., Inc., 121 DPR 633, 637 (1988).
Lo anterior significa que los tribunales, en el ejercicio inherente de supervisar la conducta de los miembros de la profesión legal que postulan ante sí, pueden descalificar a un abogado que incurra en una conducta que obstaculice la sana administración de la justicia o infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. Por ello, el Tribunal de Primera Instancia está facultado para ordenar la descalificación de un representante legal cuando ello propenda a la adecuada tramitación del litigio y resulte necesario para la solución justa, rápida y económica de los pelitos. Meléndez v. Caribbean Int’l. News, 151 DPR 649, 661 (2000). Ello, pues la descalificación puede proceder para prevenir una violación a cualquiera de los cánones del Código de Ética Profesional o para evitar actos disruptivos entre los abogados durante el litigio. Id. Véase R. Hernández Colón, Práctica jurídica de Puerto Rico: derecho procesal civil, 5ta ed., Lexis Nexis de Puerto Rico, 2010, pág. 73. Así pues, un adjudicador puede valerse de este mecanismo para asegurar el cumplimiento de un abogado con sus deberes para con la sociedad, los tribunales, sus clientes, sus compañeros y su profesión.
Como consecuencia, la descalificación no conlleva necesariamente una sanción ética. Empero, afecta negativamente varios aspectos, tales como los derechos de las partes y el trámite de los procedimientos, por lo que no debe atenderse ligeramente. Job Connection Center v. Sups. Econo, 185 DPR 585, 596-597 (2012). Las consecuencias para las partes son reales, múltiples y complejas. De entrada, advenir sin representación legal una vez iniciado el *944 pleito, en la mayoría de las ocasiones conllevaría la adquisición de una nueva representación legal, un periodo para que esta se familiarice con el caso y, conjuntamente, un tiempo para que se entable una nueva relación abogadocliente, lo que representaría un cambio sumamente oneroso. De otro modo, el negar la concesión de una solicitud cuando de esta surge que existe, o podría existir, una violación al Código de Ética Profesional o que se afectaría negativamente a una parte, podría ser igualmente lesivo. Así, hemos señalado que los procesos de descalificación “conllevan repercusiones que tienen el efecto potencial de afectar los derechos de las partes y el trámite de los procedimientos”. íd., pág. 599. A estos efectos, la norma jurídica desarrollada requiere que al momento de evaluar una solicitud de descalificación, el tribunal sopese los intereses en conflicto, a saber, el derecho que le asiste a todo ciudadano a escoger libremente el abogado que lo represente,(1) el derecho a un descubrimiento de prueba amplio y liberal, y “el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial [...]”. Id., pág. 597.
En este análisis se deben considerar las particularidades de cada caso y los efectos de la concesión o denegación de solicitudes dirigidas a alterar el curso ordinario de los pleitos. Conjuntamente, se debe velar por el derecho que posee el abogado sujeto a ser descalificado a presentar prueba en su defensa y a ser escuchado. In re González Blanes, 65 DPR 381 (1945). Como regla general, al momento de dirimir si procede la solicitud de descalificación de un representante legal, los tribunales consideran los factores siguientes: (1) la legitimación de quien solicita la descalifica *945 ción; (2) la gravedad de la posible violación ética; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el expertise de los abogados implicados; (4) la etapa de los procedimientos cuando se solicita la descalificación y el efecto para la solución justa, rápida y económica del caso, y (5) el propósito detrás de la solicitud de descalificación, es decir, si esta se utiliza como una práctica dilatoria. Otaño v. Vélez, supra.
Como expusimos, la descalificación puede proceder para prevenir una violación a cualquiera de los cánones del Código de Ética Profesional. Este Código sirve como un cuerpo normativo dirigido a establecer las pautas mínimas que deben guiar a los abogados en el desempeño de su profesión. In re Nogueras Cartagena, 150 DPR 667 (2000). En este se prescribe un ordenamiento que regula las interacciones de los abogados con los demás miembros de la sociedad con miras a salvaguardar la integridad y altitud de la profesión y de sus integrantes. Asimismo, codifica la conducta de los representantes legales en el contexto de la relación abogado-cliente mediante el establecimiento de normas destinadas a evitar los conflictos de intereses y la protección de la confianza y confidencialidad características de este vínculo.
En el contexto de la situación ante nos, el Canon 22 del Código de Ética Profesional, supra, regula la situación conflictiva que surge al requerirse la presencia de un abogado como testigo en el caso que litiga. Este canon dispone que los abogados no deben convertirse en testigos en apoyo de sus clientes, excepto en situaciones en las cuales se pretende obtener un testimonio sobre asuntos meramente formales. No obstante, cuando el testimonio resulta necesario, el abogado se encuentra en la obligación de renunciar a la representación legal para no macular la relación abogado-cliente. Id. Ahora, cuando el llamado a testificar lo es un socio o un abogado que labora en el mismo bufete que el representante legal de una parte, procede la renuncia *946 del representante legal en el litigio tan pronto se entere de que alguno de sus socios o compañeros de bufete “puede ser llamado a declarar en contra de su cliente”. (Énfasis suplido). íd.
IV
Ante el cuadro normativo expuesto, para dilucidar la controversia de autos se requiere establecer un escrutinio judicial integral que considere el efecto que puede conllevar tanto la deposición como la descalificación solicitada. Ello, pues la descalificación se fundamenta en que el abogado a deponer se llama a declarar en contra del cliente del bufete del que es miembro. Veamos.
A. Como parte de ese análisis estamos de acuerdo con lo expresado por la mayoría de este Tribunal en cuanto a que se debe extender lo resuelto en Ades v. Zalman, supra, para que aplique a los abogados que, sin representar a parte alguna en el pleito, pertenecen al bufete que asume la representación legal. Por lo tanto, en primer lugar, la parte que solicita la deposición debe demostrar justa causa para que proceda la deposición solicitada. Es decir, los tribunales deben examinar si se justifica la toma de la deposición y si existen medios menos onerosos para conseguir la prueba solicitada. De entenderse que el descubrimiento de prueba no es indispensable o que podría obtenerse por otro medio, no procedería la deposición solicitada.
Ahora bien, una vez cumplido con el requisito de justa causa expuesto en Ades v. Zalman, supra, el examen no puede culminar sin evaluar la situación peculiar que surge ante la descalificación solicitada, porque el abogado a deponer puede ser llamado a declarar en contra del cliente del bufete del cual es socio o miembro. Esto, ya que hemos anticipado que se pueden presentar situaciones en las que se niegue la toma de una deposición cuando ello resulte apro *947 piado, aunque haya justa causa para deponer. Zaragoza v. Tribl. Superior, 78 DPR 447, 451 (1955).
B. En el caso particular de una solicitud de descalificación por una posible infracción al Canon 22 del Código de Ética Profesional, supra, es necesario analizar el hecho de que la renuncia del representante legal procede si el testimonio del socio o abogado de la firma es en contra del cliente del bufete en el que labora. Para ello, basta que el abogado se entere que él, su socio o un abogado de su firma puede ser llamado a declarar en contra de su cliente. Id. Por lo tanto, este hecho debe considerarse y no ignorarse antes de ordenar la deposición cuando la parte que la solicita ha indicado reiteradamente que se propone hacer deponer al abogado como testigo.
Al tribunal le corresponde considerar los posibles efectos que conlleva ordenar la toma de la deposición sobre una potencial descalificación de la representación legal. A nuestro juicio, postergar tal consideración redunda en un análisis defectuoso que no considera los balances de intereses en juego. Por un lado, la necesidad de un descubrimiento de prueba liberal y amplio, y por otro, la importancia que tiene la representación legal para un cliente. Máxime cuando hemos reconocido que, en ocasiones, el descubrimiento de prueba se utiliza como un medio mortificante, abusivo y opresivo que tiene como efecto trastocar el curso ordinario del litigo. Ades v. Zalman, supra, págs. 523-524.
No podemos olvidar que siempre existe el riesgo de que se intente la deposición de un miembro de un bufete con el fin de hostigar a la parte contraria. Por lo tanto, se debe escrutar el momento cuando tiene lugar la solicitud de deposición y descalificación presentada para considerar las motivaciones que la promueven, como por ejemplo, si en efecto se utiliza para la dilación de los procedimientos, la complejidad del caso y la experiencia de los abogados ante situaciones que podrían surgir, como la capacidad para li *948 diar con el careo que conlleva el contrainterrogatorio de un compañero de bufete.
La incorporación de estos criterios al esquema provisto alcanza establecer unos parámetros que abaten la aplicación aislada de la norma establecida en Ades v. Zalman, supra, y fomentan un balance adecuado entre el derecho a un descubrimiento de prueba amplio y liberal, el derecho a un juicio justo e imparcial y el derecho a la libre selección de su representación legal. Además, soslaya el uso inadecuado de la solicitud de toma de deposición como estrategia de litigio o subterfugio para la intimidación en la tramitación de un juicio.
El conjunto de criterios antes mencionado completa el escrutinio judicial que los foros adjudicativos deben realizar para dilucidar si procede una solicitud de toma de deposición dirigida a un abogado que no es parte de la representación legal, cuando paralelamente se pretende la descalificación del abogado de la parte contraria. Una vez el tribunal considere el esquema establecido, tendrá las herramientas para disponer sobre la toma de deposición. Limitar el escrutinio judicial al cumplimiento con los requisitos de justa causa establecidos en Ades v. Zalman, supra, sin evaluar los efectos que la toma de deposición tendría ante una posible descalificación, resulta fragmentario y derrota el propósito que se persigue con su imposición, a saber, promover la solución justa de los pleitos que se ventilan ante los tribunales. Por ello, a modo de lograr un análisis justo y balanceado previo a alcanzar una determinación en torno a una solicitud de descalificación, resulta meritorio considerar el contexto en que se encuentra la referida solicitud y el criterio de justa causa no estaría completo.
*949 V
Conforme a lo expuesto y tras un minucioso análisis del asunto ante nuestra consideración, procedemos a aplicarlo a los hechos ante nuestra consideración.
De las determinaciones emitidas por el Tribunal de Primera Instancia surge con claridad que el análisis efectuado en cuanto a la solicitud de toma de deposición estimó que se había cumplido con el criterio general de pertinencia y con los criterios de justa causa y ausencia de medios menos onerosos. Ello, pues luego de que el foro de instancia ordenó el descubrimiento de prueba por otros medios, Ernst & Young no lo produjo.(2) A raíz de ello, entendió que procedía la autorización requerida para deponer al licenciado Cañellas Fidalgo, toda vez que la solicitud se ceñía a los requerimientos de nuestro ordenamiento normativo y jurisprudencial. No obstante, ante la ausencia de un escrutinio judicial apropiado para la situación particular presentada, no surge que el tribunal efectuara un análisis integral que considerara criterios adicionales dirigidos a evaluar los efectos de la presencia de una solicitud de descalificación fundamentada en que el abogado a deponer será citado como testigo.
VI
Como consecuencia de lo anterior, opino que la norma de Ades v. Zalman, supra, resulta exigua al atender una solicitud de toma de deposición que da lugar a una simultánea petición de descalificación por posible infracción ética. Por lo tanto, considero imperativo la adopción del examen aquí expuesto para lograr el balance necesario en este tipo de circunstancias. Así las cosas, devolvería el asunto para que *950 el foro primario culmine el escrutinio expuesto conforme a los criterios señalados y determine si procede la toma de deposición del licenciado Cañellas Fidalgo. Como consecuencia, disiento del curso de acción tomado por una mayoría de este Tribunal.

 Este Tribunal ha reconocido el derecho de todo ciudadano a seleccionar libremente su representación legal. Meléndez v. Caribbean Int’l. News, 151 DPR 649 (2000); Otaño v. Vélez, 141 DPR 820 (1996); In re Vélez, 103 DPR 590 (1975). Empero, este derecho no ha sido considerado como un derecho fundamental. Es decir, no existe un derecho absoluto a estar representado en el trámite de un pleito civil ni a estarlo por un abogado en particular. Meléndez v. Caribbean Int’l News, supra.

 La mayoría, paradójicamente, en lugar de confirmar el dictamen, devuelve el caso para que se realice lo que ya se realizó.