ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| GABRIELA SOFÍA RIVERA EMANUELLI<br><br>APELADA<br><br>V.<br><br>FEDERICO ANTONIO CARDONA FIRPI<br><br>APELANTE | KLAN202300857 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Guaynabo<br><br>Caso Núm.: GB2023RF00056<br><br>Sobre: Divorcio |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y la Jueza Rivera Pérez

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de noviembre de 2023.

Comparece la parte apelante, el señor Federico Antonio Cardona Firpi, y solicita nuestra intervención para revocar la *Sentencia Enmendada*, emitida y notificada el 5 de septiembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Guaynabo (TPI).[1] En el dictamen apelado, el TPI declaró roto y disuelto el vínculo matrimonial por ruptura irreparable, habido entre el Sr. Cardona Firpi y la parte apelada, la señora Gabriela Sofía Rivera Emanuelli. Además, el TPI impuso al apelante el pago de $10,000 en honorarios por temeridad.

Adelantamos que, por los fundamentos que expondremos, confirmamos el pronunciamiento judicial impugnado.

**I**

La causa del título se inició el 14 de junio de 2023, ocasión en que la Sra. Rivera Emanuelli interpuso una *Demanda* de divorcio.[2] Indicó que, junto al apelante, otorgó capitulaciones el 14 de noviembre de 2022, en las que acordaron el régimen de separación de bienes. El día 19 siguiente, la

---

[1] Apéndice, págs. 87; 90-91. La *Sentencia* original fue emitida el 16 de agosto de 2023 y notificada al día siguiente. Véase, Apéndice, pág. 75 (numeral repetido).
[2] Apéndice, págs. 1-3 y anejo a la pág. 4, consistente en el certificado de matrimonio, expedido por el Registro Demográfico el 10 de mayo de 2023.

Número Identificador

SEN2023_____

pareja contrajo matrimonio. La apelada aseveró que no estaba embarazada, no había procreado hijos con el Sr. Cardona Firpi ni convivía con este. Afirmó que las desavenencias entre ellos hacían imposible la convivencia y descartó la posibilidad de una reconciliación. Solicitó la disolución del matrimonio por ruptura irreparable.

El Sr. Cardona Firpi presentó, el 16 de julio de 2023, la *Contestación a Demanda*.[3] En esencia, aceptó las alegaciones antes resumidas. No obstante, como defensa afirmativa, arguyó que, durante el noviazgo de dos años, la apelada ocultó un trauma de su niñez, así como supuestas adicciones y condiciones mentales que viciaron por dolo grave su consentimiento al matrimonio. A base lo anterior y a una presunta conducta constitutiva de violencia doméstica, manifestada desde el noviazgo, el apelante instó una *Reconvención*, mediante la cual impugnó el matrimonio y solicitó la anulación del vínculo.

En vista que el apelante aceptó la existencia de desavenencias que impedían la convivencia matrimonial, el 24 de julio de 2023, la Sra. Rivera Emanuelli solicitó al TPI que dictara sentencia a base de las alegaciones, sin celebrar una vista en sus méritos, al amparo de la Regla 10.3 de Procedimiento Civil.[4] En su escrito, la apelada se limitó a citar las propias alegaciones del apelante y no expuso materias distintas ni anejó documento alguno.

En cuanto a la *Reconvención*, la Sra. Rivera Emanuelli argumentó que el ordenamiento jurídico solo reconocía el error en la identidad de la persona contrayente y no el error en las cualidades, según lo alegado por

---

[3] Apéndice, págs. 5-11.

[4] La norma es la siguiente:

Regla 10.3. Moción para que se dicte sentencia por las alegaciones

Después que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que dicte sentencia parcial o total por las alegaciones, sujeto a las disposiciones de la Regla 42.3. **Si en una moción en la que se solicite sentencia por las alegaciones se exponen materias no contenidas en dichas alegaciones y éstas no son excluidas por el tribunal, la moción deberá considerarse como una solicitud de sentencia sumaria y estará sujeta hasta su resolución final a todos los trámites ulteriores dispuestos en la Regla 36**, y todas las partes tendrán una oportunidad razonable de presentar todo asunto pertinente a dicha moción conforme a lo provisto en la citada regla. (Énfasis nuestro.) 32 LPRA Ap. V, R. 10.3.

el Sr. Cardona Firpi. Por consiguiente, peticionó la desestimación de la causa del apelante.

En respuesta, el 30 de julio de 2023, el Sr. Cardona Firpi presentó el escrito titulado *Oposición a Solicitud de Sentencia Sumaria*. Expuso que no estaban en controversia la fecha del matrimonio, el otorgamiento de capitulaciones matrimoniales y la inexistencia de hijos comunes. Sin consignar controversias medulares de hechos ni anejar documentos, insistió en la intervención de dolo como vicio de su consentimiento. Por tanto, solicitó la continuación de los procedimientos ordinarios y que se permitiera el descubrimiento de prueba.

El 16 de agosto de 2023, el TPI celebró la vista por videoconferencia, a la que comparecieron las partes debidamente representadas por sus respectivos abogados. Luego de escuchar los argumentos de los litigantes, el TPI declaró "con lugar" el divorcio por ruptura irreparable.[5]

Inconforme, el Sr. Cardona Firpi presentó una *Moción de Reconsideración*.[6] Planteó fundamentos legales distintos a los ya esbozados en el juicio y en sus escritos judiciales. En particular, aludió a los Artículos 384 (b), 386 y 389 (k) del Código Civil, *infra*. Además, reiteró la solicitud para que se diera paso al descubrimiento de prueba y con ello "presentar evidencia oral y documental sobre los hechos alegado en su reconvención" y, afirmó que esa "prueba, a su vez, **estará encaminada a establecer que la demandante ocultó dolosamente las condiciones médicas alegadas en la reconvención**."[7] (Énfasis nuestro.)

El 5 de septiembre de 2023, el TPI notificó dos dictámenes: la *Resolución* que declaró "no ha lugar" la *Moción de Reconsideración*;[8] y la *Sentencia Enmendada*, a los fines de imponer $10,000 en concepto de honorarios por temeridad.

---

[5] Apéndice, pág. 74.
[6] Apéndice, págs. 76-84.
[7] Apéndice, pág. 83.
[8] Apéndice, págs. 85-86; 87-89.

Aún inconforme, el Sr. Cardona Firpi acudió oportunamente a este foro intermedio y señaló la comisión de los siguientes errores:

**PRIMER ERROR:** El TPI erró y abusó de su discreción al denegar la moción de reconsideración de Cardona por fundamentos procesales. Decidió incorrectamente que la moción de reconsideración pretendía enmendar postsentencia las alegaciones de la reconvención.

**SEGUNDO ERROR:** El TPI erró al conceder la demanda de divorcio y desestimar por las alegaciones la reconvención de Cardona. La reconvención de Cardona contiene una reclamación que justifica la concesión del remedio de anulación matrimonial por el vicio de dolo y, por tanto, no se debió desestimar.

**TERCER ERROR:** El TPI erró y abusó de su discreción al enmendar la sentencia e imponerle $10,000 en honorarios de abogados por temeridad a Cardona.

La Sra. Rivera Emanuelli compareció mediante el escrito titulado *Alegato en oposición a recurso de apelación.* Con el beneficio de ambas posturas y la transcripción de la prueba oral admitida,[9] resolvemos.

**II**

**A**

El Artículo 376 del Código Civil de 2020 define el matrimonio como "una institución civil que procede de un contrato civil en virtud del cual dos personas naturales se obligan mutuamente a ser cónyuges, y a cumplir la una para con la otra los deberes que la ley les impone." 31 LPRA sec. 6591. Establece el ordenamiento que **la disolución o anulación del vínculo únicamente procede por los fundamentos expresamente previstos en el propio Código Civil de 2020**. *Id.* Los requisitos necesarios para contraer matrimonio son: "(a) capacidad legal de los contrayentes; (b) **consentimiento expreso de las partes contrayentes**; y (c) autorización y celebración de un contrato matrimonial, observando las formas y solemnidades prescritas por la ley," (Énfasis nuestro.) Art. 377 del Cód. Civil, 31 LPRA sec. 6592. Cónsono con lo anterior, un matrimonio es nulo "(a) si no ha habido consentimiento de parte de cualquiera de los

---

[9] Apéndice, págs. 31-73.

contrayentes; (b) se ha celebrado en contravención de alguno de los impedimentos señalados por este Código; o (c) no se han cumplido las formalidades requeridas para su constitución." Art. 403 del Cód. Civil, 31 LPRA sec. 6661. Cualquiera de los contrayentes está legitimado para ejercer la acción de nulidad, la cual no prescribe. Arts. 404-405 del Cód. Civil, 31 LPRA secs. 6662-6663. Asimismo, entre otras causas, **la anulabilidad o nulidad relativa procede cuando el consentimiento viciado es dado por error sobre la identidad de la persona, en el momento de celebrarse el matrimonio**. Art. 406 (c) del Cód. Civil, 31 LPRA sec. 6664 (c). Sobre este tema, se ha interpretado lo siguiente:

> Es menester señalar expresamente que **el error que vicia el consentimiento matrimonial es el error sobre la persona física del contrayente y no el error en las cualidades de su persona**, como se dispone en las reglas generales. Según comenta el profesor Serrano Geyls, este es un error que solo se manifiesta en casos extremos como el de gemelos idénticos, de ceguera de quien padece el error, o de matrimonios por poder. (Énfasis nuestro.) M. Garay Aubán, (Compilador), *Código Civil, Las Instituciones Familiares*, 2da ed. corregida y ampliada, San Juan, Ediciones SITUM, 2021, Tomo 2, pág. 101.

Tal como se desprende del fragmento citado, el error que vicia el consentimiento es el que se da sobre la identidad de la persona contrayente, no sobre sus cualidades o características particulares. Véase, R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada*, San Juan, Ed. Programa de Educación Jurídica Continua de la U.I.P.R., 1997, 3ra. reimpresión 2007, Vol. I, pág. 193; *López v. Valdespino*, 6 DPR 172 (1904). De hecho, en su obra, Serrano Geyls apuntó que ni la ley ni la jurisprudencia de Puerto Rico han aceptado el vicio del consentimiento conocido como error en las cualidades de la persona. *Id.*, pág. 194.

De otro lado, entre los requisitos del matrimonio se encuentra la realización de exámenes médicos. Art. 384 (a) del Cód. Civil, 31 LPRA sec. 6611 (a). En particular, el Artículo 385 requiere que los contrayentes se sometan a pruebas de detección de "Sífilis, Gonorrea, Clamidia, el Virus de

Inmunodeficiencia Humana (VIH) y **cualquier otra enfermedad de transmisión sexual** que determine el Secretario de Salud." (Énfasis nuestro.) 31 LPRA sec. 6612. Al respecto, el Código Civil establece lo siguiente: "[c]ada contrayente está obligado a informar al otro el resultado de los exámenes médicos realizados en ocasión de la celebración del matrimonio" y "[l]a ocultación deliberada y consciente de información que comprometa la integridad física y emocional del otro contrayente constituye un vicio del consentimiento." Art. 386 del Cód. Civil, 31 LPRA sec. 6613. En cuanto a ese artículo, se ha comentado sobre su finalidad como sigue:

> El propósito del texto propuesto es procurar que ambos contrayentes compartan recíprocamente información importante sobre el historial de salud de cada cual, sobre todo, cuando van a constituir juntos una comunidad de vida. Además, pretende **evitar que un contrayente exponga al otro a una condición de salud de alto riesgo, como lo es una enfermedad contagiosa, sea venérea o de otra naturaleza**. Se impone la urgencia de dar la información oportunamente, de modo que el otro contrayente pueda entrar a la relación con libertad y conocimiento suficientes. Por tanto, el artículo promueve la **política pública del Estado de proteger la salud de sus ciudadanos y el derecho de estos a contraer matrimonio, siempre que el consentimiento que prestan no esté viciado**. Nótese que, si un contrayente oculta su condición de salud de forma deliberada y compromete con ello la integridad física y emocional del otro, está sujeto a la responsabilidad penal y civil correspondiente. De esta forma, se armoniza el artículo propuesto con las tendencias modernas desarrolladas en el ámbito constitucional respecto a los derechos de una persona enferma a casarse. **Si la persona enferma no cumple con el deber de informarle al otro contrayente, se expone a responsabilidad civil y a las implicaciones en el ámbito penal relacionadas a la responsabilidad ante el contagio que provoque a otra persona que está ajena a su estado de salud**. (Énfasis nuestro.) Garay Aubán, *op. cit.*, pág. 68.

Por igual, los contrayentes deben suscribir una declaración jurada que dé fe de su capacidad para casarse. Art. 384 (b) del Cód. Civil, 31 LPRA sec. 6611 (b).[10] Entre el contenido de dicha declaración jurada, se encuentra "la información relacionada con **cualquier condición médica o**

---

[10] El requisito de la declaración jurada proviene del Artículo 76 del derogado Código Civil de 1930, 31 LPRA ant. sec. 244 y es concordante con los Artículos 24 y 26 de la Ley Núm. 24 de 22 de abril de 1931, *Ley del Registro General Demográfico de Puerto Rico*, 24 LPRA sec. 1063 y 1165.

**intervención quirúrgica que, de conocerla el otro contrayente, no daría su consentimiento para el matrimonio.**" (Énfasis nuestro.) Art. 389 (k) del Cód. Civil, 31 LPRA sec. 6616 (k). Es menester mencionar que el inciso (k) del Artículo 389, *supra,* no se discute en el *Memorial Explicativo del Borrador* del Código Civil. Acerca de este articulado, en la *Exposición de Motivos* de la Ley Núm. 55 de 1 de junio de 2020, *Código Civil de Puerto Rico de 2020*, 31 LPRA sec. 5311 *et seq.*, el legislador se limitó a señalar lo siguiente:

> Se exige a todo contrayente, **someterse a análisis y exámenes médicos para detectar la existencia de enfermedades de transmisión sexual**, tales como la "Venereal Disease Research Laboratory" (VDRL), clamidia, gonorrea y el Virus de Inmunodeficiencia Humana (VIH) que causa el síndrome de inmunodeficiencia adquirida (SIDA). Se añade el requisito de someterse a la prueba de VIH-SIDA. Anteriormente no se incluía dicha prueba entre los requisitos por sus altos costos, pero hoy día, su costo es poco oneroso.
>
> También se establece en el Código la **obligación de toda persona que pretenda contraer matrimonio, de divulgar al otro contrayente los resultados de exámenes médicos**. La ocultación deliberada y consciente de información que comprometa la integridad física y emocional del otro contrayente conlleva responsabilidad civil y penal. **Esta norma sustituye la prohibición absoluta, contenida en la Ley Núm. 133 del 14 de mayo de 1937, según enmendada,** de contraer matrimonio si la persona tiene alguna de estas enfermedades, mientras subsista tal enfermedad. (Énfasis nuestro.)

La Sección 1 de la aludida Ley Núm. 133 del 14 de mayo de 1937*, Ley sobre la Prohibición y Nulidad del Matrimonio en Personas que Sufren de Deficiencias en el Desarrollo, Trastornos del Desarrollo Intelectual, Trastornos de Salud Mental, o Enfermedades de Transmisión Sexual (ETS),* 31 LPRA sec. 235, dispone como sigue:

> Por la presente **queda prohibido el que personas que padezcan de** deficiencia en el desarrollo, trastornos del desarrollo intelectual o algún otro **trastorno de salud mental cuando dicha condición les impida prestar su consentimiento, sífilis y de cualquier enfermedad venérea**, **contraigan matrimonio, mientras subsista la enfermedad, condición mental** o deficiencia; y **si tal matrimonio llegare a ser contraído podrá el mismo ser anulado** por la Sala Superior del Tribunal de Primera

Instancia de la residencia de cualesquiera de los contrayentes, a petición del fiscal de la Sala Superior del Tribunal de Primera Instancia, o de parte interesada, con intervención del fiscal de la Sala Superior del Tribunal de Primera Instancia en que la acción se radique. Disponiéndose, que la acción de nulidad no podrá ejercitarse si la causa hubiere desaparecido al momento de iniciarse la acción. (Énfasis nuestro.)

**B**

En nuestro ordenamiento jurídico, además de la muerte y la declaración de la muerte presunta, el divorcio constituye la tercera causa de disolución del matrimonio. Art. 417 del Cód. Civil, 31 LPRA sec. 6741. La disolución del matrimonio mediante el divorcio "conlleva la ruptura definitiva del vínculo habido entre las partes y el fin del régimen económico matrimonial." Art. 420 del Cód. Civil, 31 LPRA sec. 6744; *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR __ (2023).

En el Código Civil solo existen dos procedimientos para el divorcio: el matrimonio disuelto por el consentimiento de ambos cónyuges y por ruptura irreparable de los nexos de convivencia matrimonial. Art. 425 del Cód. Civil, 31 LPRA sec. 6772. Este último puede instarse ante el tribunal, mediante una petición conjunta o una **petición individual por ruptura irreparable de los nexos de convivencia matrimonial**. *Id.* Existe ruptura irreparable "cuando hay un profundo, irreconciliable e irremediable conflicto entre los caracteres de los cónyuges que hace imposible la continuación de una relación conyugal ordinaria." R. Serrano Geyls, *Derecho de Familia de Puerto Rico y legislación comparada*, San Juan, Ed. Programa de Educación Jurídica Continua de la U.I.P.R., 1997, 3ra. reimpresión 2007, Vol. I, pág. 621. En estos casos, "**el tribunal decretará disuelto el vínculo matrimonial previa notificación mediante emplazamiento y celebración de vista**." (Énfasis nuestro.) Art. 433 del Cód. Civil, 31 LPRA sec. 6780. El Artículo 434 del Código Civil estatuye que "**[l]a sentencia de divorcio por petición individual de ruptura irreparable de los nexos de convivencia matrimonial disolverá el vínculo matrimonial sin describir**

**la conducta específica que da lugar a la petición**." (Énfasis nuestro.) 31 LPRA sec. 6781; *Torres González v. Zaragoza Meléndez*, *supra*.

**C**

De ordinario, el descubrimiento de prueba en procedimientos civiles es amplio y liberal. *McNeil Healthcare v. Mun. Las Piedras II*, 206 DPR 659, 672 (2021). En general, el proceso aspira facilitar la búsqueda de la verdad, al delimitar las controversias y perpetuar la evidencia *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR __ (2023), que cita a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, págs. 333-334. A tales fines, en su parte pertinente, la Regla 23.1 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1 (a), establece que los litigantes podrán indagar "sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente [...]" Sin embargo, **el descubrimiento de prueba no equivale a una carta en blanco para hostigar y perturbar a la parte contraria**. *Vincenti v. Saldaña*, 157 DPR 37, 54 (2002). En estas instancias, "en el ejercicio de su sana discreción, [el tribunal] puede limitar el alcance y los mecanismos a utilizarse, ya que **su obligación es garantizar una solución justa, rápida y económica del caso**, sin que ello constituya alguna ventaja para cualquiera de las partes en el pleito." (Énfasis nuestro.) *Torres González v. Zaragoza Meléndez*, *supra*, que cita a *Vincenti v. Saldaña*, *supra*.

**D**

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. En su parte pertinente, el inciso (d) de la mencionada norma establece lo siguiente:

> En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, **el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta**." (Énfasis nuestro.) 32 LPRA Ap. V, R. 44.1 (d).

Nuestro Tribunal Supremo ha definido el concepto de temeridad "como aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables." *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Según lo ha expresado el Tribunal Supremo, la penalidad aspira "disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte." *Id.*, pág. 505. Por igual, el propósito de la imposición de honorarios por temeridad es penalizar a la parte perdidosa que "por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). La determinación de si una parte obró con temeridad descansa en la sana discreción del tribunal sentenciador. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). **La imposición del pago de honorarios de abogado es imperativa cuando el tribunal sentenciador concluye que una parte incurrió en temeridad**. *Id.* En cuanto a los criterios de revisión, por constituir un asunto discrecional del tribunal sentenciador, los foros apelativos solo intervendremos en dicha determinación cuando surja un claro abuso de discreción. *Jarra Corp. v. Axxis Corp.*, 155 DPR 764, 779 (2001).

**III**

En el caso del epígrafe, el Sr. Cardona Firpi solicita la revocación de la *Sentencia Enmendada* que decretó el divorcio, que se ordene a la Sra. Rivera Emanuelli a contestar la *Reconvención* desestimada y que se permita el descubrimiento de prueba. En los dos primeros señalamientos de error, el apelante plantea que el TPI incidió al desestimar su *Reconvención*, conceder la *Demanda* y no dar lugar a la *Moción de Reconsideración*. Niega haber enmendado las alegaciones en la etapa

postsentencia, sino que "expandió sus argumentos legales"[11] y sostiene tener una reclamación que justifica la concesión del remedio de anulación matrimonial por el vicio de dolo grave. Igualmente, en el tercer señalamiento de error, alega que el TPI abusó de su discreción al imponer $10,000 en honorarios de abogados por concepto de temeridad.

Por su relación intrínseca, discutiremos conjuntamente el primer y segundo señalamientos de error.

En esencia, el Sr. Cardona Firpi solicita la nulidad del vínculo matrimonial ya que, al momento de contraer matrimonio, presuntamente la Sra. Rivera Emmanuelli no reveló intencionalmente (dolo grave) una alegada condición mental, consistente en un trauma de la niñez. Por igual, según el apelante, durante el matrimonio, descubrió que la apelada padecía de unas supuestas adicciones y que, de haberlo sabido, no hubiera prestado su consentimiento al matrimonio.

En su recurso apelativo, el Sr. Cardona Firpi aduce que el TPI dictó la *Sentencia Enmendada* de divorcio al descartar erróneamente los fundamentos expuestos en la *Moción de Reconsideración*. Ciertamente, el ordenamiento procesal civil exige que la moción de reconsideración se presente dentro de un término jurisdiccional de quince días y que se expongan con suficiente particularidad y especificidad los hechos y el derecho que la parte promovente estime que deben considerarse. 32 LPRA Ap. V, R. 47. En cuanto a sus fundamentos, la doctrina ha pautado que el promovente puede exponer al tribunal "nuevos argumentos sobre los hechos o el derecho que no se presentaron antes a fines de que reconsidere la resolución o la sentencia que ha dictado, o se puede volver a argumentar en otra forma lo que ya se discutió antes, para demostrar al tribunal que se ha cometido un error y que debe reconsiderar su pronunciamiento." R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis de Puerto Rico, 2017, sec. 4602, pág. 441. Es decir, en reconsideración, "pueden

---

[11] *Recurso de Apelación*, págs. 6-7.

exponerse fundamentos no expuestos antes de que se haya dictado la sentencia o resolución, pero no pueden formularse por primera vez planteamientos que necesiten apoyo en prueba no presentada en juicio." *Id.*

En su *Moción de Reconsideración*, el apelante presentó nuevos argumentos de Derecho para defender su contención y expresó, por primera vez, que la presunta omisión dolosa de la apelada se extendió a la Declaración Jurada que exige el Artículo 389 del Código Civil, *supra*.[12] Esta alegación fue interpretada por el TPI como una enmienda a las alegaciones en etapa postsentencia. Si bien el TPI pudo dirimir los asuntos de Derecho, opinamos que no erró en su análisis sobre la improcedencia de la nueva alegación ni en su determinación al declarar "no ha lugar" el pedimento de reconsideración. Ello así, ya que el TPI, a la luz de los hechos del caso, interpretó correctamente que el Código Civil concede la nulidad por vicio en el consentimiento por error sobre la identidad de la persona contrayente, no sobre sus cualidades, como las que el apelante intenta imputar a la apelada.

Además, las determinaciones judiciales con respecto a la *Reconvención* y a la *Moción de Reconsideración* se sostienen por fundamentos adicionales que, sumados a los Artículos 376 y 406 del Código Civil, *supra*, nos compelen a confirmar el dictamen impugnado. Veamos.

Primero, una interpretación integral de las disposiciones legales atinentes, en que se exige a los contrayentes someterse a exámenes

---

[12] En la vista en su fondo, el Sr. Cardona Firpi no presentó la Declaración Jurada, que es razonable imputarle una copia en su poder, ni realizó una oferta de prueba. Refiérase a la Regla 104 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 104. En el juicio, la representación legal del apelante objetó y trajo a colación el asunto de la nulidad y expresó lo siguiente: "Lo que sucede es que mi cliente no tiene prueba que pasar ninguna (*sic*) porque el tribunal desestimó su causa de acción." Apéndice, pág. 56 (líneas 721-722); y que "la causal de ruptura irreparable no,(*sic*) no permite defensa en contrario." Apéndice, pág. 60 (líneas 850-851). Es meritorio mencionar que, antes de dar por sometido el caso, el TPI dio oportunidad para la presentación de prueba. Refiérase al Apéndice, pág. 67 línea 1050.

En cuanto a la prueba en apoyo a sus alegaciones en general, el expediente está huérfano, ya que el apelante tampoco presentó evidencia alguna en su *Oposición a Solicitud de Sentencia Sumaria*.

médicos y develar sus respectivos resultados, sugiere que el legislador se refiere preponderantemente a enfermedades venéreas contagiosas. La política pública del Estado aspira la protección de los futuros esposos y, en torno a ello, que el consentimiento no adolezca de vicio.

Huelga decir que, aun tomando literalmente la frase "cualquier condición médica" del inciso (k) del Artículo 389, *supra*, lo cierto es que, en este caso, el apelante alega que, durante el matrimonio, advino en conocimiento de unas supuestas adicciones de la apelada; y, asegura, sin más, que estas se originaron desde antes del vínculo, aun cuando la pareja tuvo un noviazgo de dos años. Si bien el Código Civil no regula el noviazgo, de ordinario, este tipo de relación amorosa es con fines matrimoniales y compete a la pareja conocer las cualidades del otro, así como identificar sus compatibilidades y diferencias. En nuestra jurisdicción, el estado de Derecho vigente no permite alegar error en las cualidades de la persona como causa de vicio en el consentimiento. Cabe mencionar que, al contraer nuevas nupcias con la apelada, el Sr. Cardona Firpi contaba con capacidad legal, era mayor de edad, tenía 38 años, y a pesar de haberlo catalogado como un atropellado noviazgo, incluso así prestó su consentimiento para casarse.

Con relación al alegado trauma infantil que el apelante unilateralmente afirma trastorna la salud mental de la apelada,[13] el ordenamiento es claro al buscar proteger al contrayente que los padece, ya que la condición de que se trate pudiese ser impedimento para que este pueda prestar un consentimiento válido al matrimonio. En su causa de acción, no obstante, la Sra. Rivera Emanuelli —quien en observancia al ordenamiento jurídico no aludió a ninguno de estos asuntos— no cuestionó su propio consentimiento, sino que solicitó el divorcio por ruptura irreparable, incluso sin la celebración de una vista.

---

[13] El Artículo 100 del Código Civil, 31 LPRA sec. 5601, dispone que "[s]e presume la capacidad de la persona natural mayor de edad, de obrar por sí misma. Contra esta presunción solo se admite la sentencia de incapacitación absoluta o de restricción parcial de la capacidad por las causas y la extensión que determina la ley."

Segundo, somos del criterio que el Sr. Cardona Firpi está solicitando una expedición de pesca improcedente en una petición individual de divorcio por ruptura irreparable, en que **el ordenamiento estatuye palmariamente que el vínculo se disuelve sin que se describa la conducta específica que dio lugar a la demanda por dicha causal**. El descubrimiento de prueba peticionado, dirigido a establecer una supuesta ocultación dolosa, además de académico, persigue indagar en la intimidad de la apelada y en un historial médico totalmente especulativo. Todo esto es incompatible con la finalidad del proceso de divorcio por ruptura irreparable que la Sra. Rivera Emanuelli solicitó, amén de que obstaculiza la solución justa, rápida y económica de todo procedimiento.

En fin, durante el juicio en sus méritos, la apelada y peticionaria del divorcio por ruptura irreparable testificó que se casó en 2022 con el apelante, con quien otorgó capitulaciones matrimoniales. Atestiguó que no tuvieron hijos ni se encontraba embarazada. Esta afirmó que residió en Puerto Rico durante el año anterior. Asimismo, reiteró ante el TPI su solicitud libre y voluntaria de divorciarse por la causal invocada, ya que no existía ninguna posibilidad de reconciliación.[14] En consecuencia, es forzoso concluir que procedía el decreto de la disolución matrimonial por ruptura irreparable, sin trámite ulterior.[15] El primer y segundo error no se cometieron.

Por último, con relación al tercer señalamiento de error, según reseñamos, la imposición de honorarios de abogado descansa en la sana discreción del TPI. Por ello, como tribunal revisor, debemos otorgar deferencia a la concesión de esta sanción procesal, que persigue castigar la temeridad y evitar la dilatación indebida de los procedimientos. En la

---

[14] Apéndice, págs. 42-51.

[15] En el juicio, el apelante cuestionó únicamente el certificado de matrimonio expedido el 10 de mayo de 2023 que se anejó con la *Demanda* por tener un error en su primer apellido. En la vista, la parte apelada presentó el original de un certificado de matrimonio expedido el 10 de agosto de 2023, que el Sr. Cardona Firpi omitió incluir en el Apéndice, pero surge de la transcripción de la prueba oral que el documento erró al calcular un año menos de la edad del apelante que ya había cumplido 39 años, al igual que la apelada, que ya tenía 33 años. Apéndice, pág. 48 líneas 494-497; pág. 56 líneas 732-745; y, págs. 57 líneas 746-769.

causa del título, el TPI explicó las razones específicas que movieron su discreción para imponer los honorarios de abogado a favor de la parte apelada, como sigue:

> En primer lugar, presentó una reconvención carente de fundamento alguno en derecho. Si bien promueve la anulación del matrimonio, la estrategia evidenciada se manifiesta dirigida a la dilación de los procesos, con el fin de mantener la atadura del vínculo matrimonial y causar opresión indebida sobre la parte demandante. En segundo lugar, ante la solicitud de desestimación de la parte demandante, incurrió en la impropiedad de apelar a principios inaplicables de derecho inmobiliario registral, presumiblemente al hacerse eco de un escrito pertinente a otro caso. Refiérase a escrito en oposición, al numeral 58.[16] En tercer lugar, el señor Cardona Firpi faltó al decoro de los procesos judiciales, cuando de forma desafiante se mostró reticente a contestar preguntas simples formuladas por el tribunal durante el juicio, de paso objetando personalmente, no a través de abogado. En cuarto lugar, ahora intenta enmendar sus alegaciones, de modo errático y obstinado, una vez culminado el juicio.
>
> De mayor relevancia, el demandado persiste de forma contumaz en su visión medieval del matrimonio, donde vislumbra a la mujer como mercancía sujeta a devolución de no cumplir con las expectativas originales del hombre. Este inusitado enfoque mercantilista de la mujer que propone el demandado no solo debe ser rechazado, sino que requiere la más enérgica censura por estar reñido con los derechos humanos más básicos.[17]

Del fragmento citado surge que el TPI pronunció las actuaciones que justipreció como temerarias para condenar al apelante a pagar los honorarios de abogado a favor de la apelada.[18] Estas razones son fácilmente constatables en el expediente que revisamos y en la transcripción de la prueba oral provista. **Una parte que obstinadamente insista en ciertas alegaciones sin contar con prueba fehaciente que**

---

[16] Refiérase al Apéndice, págs. 28-29.

[17] Apéndice, pág. 85.

[18] Es sabido que "no es temerario quien plantea asuntos complejos y novedosos, sobre los cuales no existan precedentes vinculantes, o cuando exista alguna desavenencia honesta en cuanto al derecho aplicable a los hechos del caso." *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 149 (2009). Somos conscientes que el Tribunal Supremo de Puerto Rico no se ha expresado sobre los efectos, si alguno, del incumplimiento de los Artículos 386 y 389 (k) por parte de un contrayente. En este caso, sin embargo, los hechos medulares que nos competen son incompatibles con cualquier causa de acción que pueda derivarse de las referidas disposiciones legales.

**las fundamente y dilata los procedimientos judiciales es claramente temeraria**. *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 149 (2009). Por ende, resolvemos abstenernos de intervenir con la determinación del TPI, toda vez que el apelante no logró demostrar un craso abuso de discreción, prejuicio, error manifiesto o parcialidad por parte del TPI.[19]

De conformidad con lo anterior y luego de un sosegado análisis, resolvemos que no existe nada en el expediente, ni en los argumentos del apelante, que nos lleve a concluir que en el presente caso se cometió algún error que conlleve la revocación de la determinación judicial. Consiguientemente, procede la confirmación del dictamen enmendado en todas sus partes.

**IV**

Por los fundamentos expuestos, confirmamos la *Sentencia Enmendada*.

**Notifíquese.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[19] Véase, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), que cita a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).