Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| JAIME OTERO VÁZQUEZ<br><br>Demandante-Apelado<br><br>vs.<br><br>WENDELIN RODRÍGUEZ NAZARIO por sí y en rep. de la menor K.M.F.R. CHRISTIAN FRAGUADA ALMENA t/c/p CHRISTIAN FRAGUADA ALMENAS<br><br>Demandados-Apelantes | KLAN202401165 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm. BY2022RF02075<br><br>Sala: 401<br><br>Sobre: IMPUGNACIÓN DE PATERNIDAD Y DETERMINACIÓN DE FILIACIÓN |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2025.

Comparece, Wendeline Rodríguez Nazario ("parte apelante"), solicita se deje sin efecto la *Sentencia* emitida y notificada el 21 de junio de 2024 por el Tribunal de Primera Instancia, Sala Superior de Bayamón. El foro primario determinó que, el señor Jaime Otero Vázquez ("parte apelada") es el padre biológico de la hija de la parte apelante. En consecuencia, ordenó el correspondiente cambio en el certificado de nacimiento de la menor.

Por los fundamentos que expondremos a continuación, *revocamos* el dictamen recurrido. Se devuelve el caso al foro primario para que celebre vista de impugnación de paternidad.

*-I-*

El 17 de noviembre de 2023, el apelado presentó *Demanda* sobre impugnación de paternidad, y determinación de filiación contra la apelante por sí, y en representación de la menor KFR, también en contra del Sr. Christian Fraguada Almena el actual

padre *de jure* de la menor. Aseveró que, durante el mes de abril de 2022, se realizó pruebas de compatibilidad genética las cuales arrojaron un resultado del 99.9% de parentesco entre la menor KFR, y él. En consecuencia, el apelado solicitó al Tribunal de Primera Instancia que, declare a la menor como su hija, y ordene al Registro Demográfico a enmendar el certificado de nacimiento.

El 9 de febrero de 2023, el Tribunal de Primera Instancia designó como Defensor Judicial de la menor al Lcdo. Juan R. Miranda Díaz. Este compareció, y expresó que, era indispensable resolver primero el asunto de la caducidad de la acción presentada por la parte apelada, y luego ordenar a las partes la realización de las pruebas. Luego de varios trámites procesales, el 7 de agosto de 2023 el foro primario emitió resolución en la que, ordenó a las partes a informar en 10 días el laboratorio seleccionado para realizarse las pruebas de ADN.

Inconforme con lo ordenado, la parte apelante presentó una *Moción Solicitando Reconsideración,* solicitó al foro primario dejar sin efecto la orden, y desestimar la causa de acción por caducidad. El 24 de agosto de 2023, el foro apelado declaró "*No Ha Lugar*" la reconsideración presentada y concedió cinco días a las partes para informar el nombre, y dirección del laboratorio seleccionado para realizarse el análisis genético.

El señor Fraguada Almena, y el apelado cumplieron con la orden. No obstante, la señora Rodríguez Nazario, inconforme con lo ordenado presentó un recurso de *certiorari.* Mediante sentencia del 8 de octubre de 2024, KLCE202301041, este Panel ordenó al Tribunal de Primera Instancia a celebrar una vista evidenciaria para resolver el asunto de la caducidad de la causa de acción filiatoria incoada por el recurrido.

El foro primario celebró la vista, y determinó que, la parte apelada presentó su acción antes de expirado el término de

caducidad de un año aplicable a los casos de filiación. Finalmente, las partes comparecieron al laboratorio seleccionado por el tribunal. El resultado de los laboratorios arrojó un 99.99999% de probabilidad en cuanto a la paternidad del apelado sobre la menor. En consecuencia, el foro primario emitió sentencia a favor de la parte apelada, y ordenó la corrección del nombre del padre en el certificado de nacimiento de la menor.

La parte apelante presentó una moción de reconsideración. Conforme expuesto en su escrito de reconsideración la parte apelante argumentó que, el foro primario debe señalar vista con el propósito de:

> [D]irimir el cumplimiento de las Reglas de Evidencia de PR en cuanto a la cadena de evidencia, si alguna, seguida por el laboratorio, las cualificaciones profesionales de quien o quienes [sic] analizaron las muestras tomadas y escuchar a la joven KMFR, quien es la principal afectada en este caso y a quien le toca enfrentar las enormes repercusiones de este cambio de vida, ser escuchada el testimonio a esta joven, y de las partes demandadas.

El foro de primera instancia denegó la reconsideración presentada por la parte apelante. Todavía inconforme, la parte apelante comparece ante este tribunal, y señala como errores:

1. Erró y abusó de su discreción el TPI al emitir sentencia declarando con lugar una demanda privando el derecho a las partes de tener su día en corte de violar la política judicial de que los casos se tiene que ver en juicio plenario.

2. Erró el TPI al presentar una Sentencia, una vez recibió la prueba de ADN, al no celebrar una vista evidenciaria para que las partes presentaran los testigos y prueba documental, ser contra-interrogados, máximo cuando la parte demandada se había opuesto a la demanda.

3. El TPI violó el derecho al mejor bienestar de la joven de 19 años, de su derecho a ser oída en corte y afectar su estado emocional ya que tiene una figura de apego con el co-demandado Cristian Fraguada.

4. Abusó de discreción el TPI al celebrar una vista evidenciaria para determinar si hubo o no el derecho de caducidad por una solicitud dispositiva presentada por el Apelante, y ordenada por el Tribunal Apelativo.

5. El TPI violó el debido proceso de ley al no permitir presentar la prueba a las partes en juicio plenario, y en violación al Informe del Manejo del Caso, donde se habían presentado testigos y prueba documental.

Examinado el expediente ante nos y considerado el contenido de los alegatos de las partes, procedemos a exponer el derecho.

*-II-*

*-A-*

En términos generales, el propósito del descubrimiento de prueba es: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. Véase R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, págs. 333-334. Por ello, el Tribunal Supremo ha retirado el carácter amplio y liberal del descubrimiento de prueba. *McNeil Healthcare v. Mun. Las Piedras II*, 206 DPR 659, 672 (2021); *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 490 (2019); *Casasnovas et al. v. UBS Financial et al.*, 198 DPR 1040, 1054 (2017). Ese alcance amplio y liberal claramente contribuye a que en "los procedimientos, se propicien las transacciones y se eviten las sorpresas indeseables durante el juicio". *McNeil Healthcare v. Mun. Las Piedras II, supra,* pág. 672.

En nuestro ordenamiento legal, la Regla 23 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 23, establece aquellos parámetros que regulan el descubrimiento de prueba en los casos civiles. Específicamente, el inciso (a) de la Regla 23.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 23.1(a), dispone que las partes en litigio podrán indagar "sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente".

La regla impone dos limitaciones fundamentales al descubrimiento de prueba: (1) se excluye toda materia privilegiada, según los privilegios que se reconocen en las Reglas de Evidencia, y (2) la materia a descubrirse tiene que ser pertinente al asunto en controversia. *Autopistas P.R. v. A.C.T.*, 167 DPR 361, 379 (2006). Véanse, además: *McNeil Healthcare v. Mun. Las Piedras II*, *supra*, págs. 673-674; *Ponce Adv. Med. v. Santiago González et al.*, 197 DPR 891, 898-899 (2017). El descubrimiento de prueba no es una carta en blanco para utilizarse indiscriminadamente para hostigar y perturbar a una parte. *Vincenti v. Saldaña*, 157 DPR 37, 54 (2002). El tribunal, en el ejercicio de su sana discreción, puede limitar el alcance y los mecanismos a utilizarse, ya que su obligación es garantizar una solución justa, rápida y económica del caso, sin que ello constituya alguna ventaja para cualquiera de las partes en el pleito. *Rivera y otros v. Bco. Popular*, 152 DPR 140, 153-154 (2000).

Los foros apelativos "[n]o hemos de interferir con los tribunales de instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último [:] (1) actuó con prejuicio o parcialidad, (2) incurrió en un craso abuso de discreción, o (3) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo". *Rivera y otros v. Bco. Popular*, *supra*, pág. 155; *McNeil Healthcare v. Mun. Las Piedras II*, *supra*, pág. 672.

En suma, el foro de primera instancia debe garantizar la pronta solución de las controversias, y por otra velar que las partes tengan la oportunidad de realizar un amplio descubrimiento para que en la vista en su fondo no surjan sorpresas. *Machado Maldonado v. Barranco Colón*, 119 DPR 563, 565-566 (1987).

**-B-**

La Regla 82(C) de Evidencia[1] dispone en esencia que:

En cualquier acción en que la paternidad sea un hecho pertinente, el tribunal podrá a iniciativa propia, o deberá, a moción de parte oportunamente presentada, ordenar a la madre, hijo o hija y al presunto padre biológico a someterse a exámenes genéticos.

Las pruebas genéticas resultan ser la alternativa más efectiva para determinar con certeza y prontitud el hecho de la paternidad o no paternidad. *Vincenti v. Saldaña, supra*, pág. 51; *Soto Cabral v. E.L.A.*, 138 DPR 298, 322 (1995). Igualmente, resultan ser la mejor evidencia en un proceso de impugnación de paternidad. *Rivera Pérez v. León*, 138 DPR 839, 842 (1995); *Moreno Álamo v. Moreno Jiménez*, 112 DPR 376, 386 (1982); *Ortiz v. Peña*, 108 DPR 458, 464 (1979).

La Regla 82(C) de Evidencia, permite que un tribunal (ya sea *motu proprio* o a solicitud de parte) ordene a la madre, hijo o hija y a un alegado padre biológico (o a cualquier otro pariente en caso de que el presunto padre haya muerto), a someterse a exámenes genéticos cuando la filiación o parentesco es un hecho pertinente. Por las mismas razones faculta al tribunal a presumir controvertiblemente la paternidad, y sus consecuencias cuando el alegado padre (o pariente) no quiere someterse al examen genético ordenado por el tribunal.

**-C-**

El debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Marrero Caratini v. Rodríguez Rodríguez*, 138 DPR 215, 220 (1995).

---

[1] La Regla 1202 de Evidencia, 32 LPRA Ap. VI, dejó vigente de modo provisional los incisos (C) y (D) de la Regla 82 de Evidencia de 1979. La Regla 82 según enmendada requiere la presentación de prueba genética en casos sobre paternidad.

En nuestro ordenamiento jurídico, este principio esencial se recoge en la Sección 7 del Artículo II de la Constitución de Puerto Rico, y en la Quinta y Decimocuarta Enmienda de la Constitución de Estados Unidos. La vertiente procesal del debido proceso de ley constituye una protección abarcadora en lo que respecta al procedimiento criminal. Esta vertiente protege a la persona imputada o acusada de delito: "La protección es un arma ofensiva y defensiva; impide al Estado ciertos métodos de investigación y procesamiento, y también proporciona al acusado armas ofensivas, como el derecho a cierto descubrimiento de prueba y a presentar cierta evidencia". Ernesto Luis Chiesa Aponte, II *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* pág. 2 (1995).

Cabe señalar, que la Regla 109 de Evidencia, durante el acto del juicio, es el vehículo procesal probatorio adecuado, como regla general, para dilucidar o determinar la admisibilidad de evidencia. *Íd.*, págs. 64-65. Esta determinación sobre la admisibilidad de la prueba debe hacerse en términos ideales, antes de que se presente, para que no llegue a oídos del juzgador prueba que no cumple con los requisitos evidenciarios. R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño, Nuevas Reglas de Evidencia 2010*, 3ra ed., Puerto Rico, Ediciones SITUM, 2010, pág. 413. La Regla 109 de Evidencia, 32 LPRA Ap. VI R. 109, establece lo relativo a las determinaciones preliminares de admisibilidad de evidencia, en particular sus incisos (A), (C) y (E) leen como sigue:

    (a) Admisibilidad en general.-Las cuestiones preliminares en relación con la capacidad de una persona para ser testigo, la existencia de un privilegio o la admisibilidad de evidencia serán determinadas por el tribunal salvo a lo dispuesto en el inciso (b) de esta regla. Al hacer tales determinaciones, el tribunal no queda obligado por las Reglas de Derecho Probatorio, excepto por aquéllas relativas a privilegios.

    (b) Pertinencia condicionada a los hechos.-Cuando la pertinencia de evidencia ofrecida depende de que se satisfaga una condición de hecho, el tribunal la

admitirá al presentarse evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha. El tribunal puede también admitir la evidencia si posteriormente se presenta evidencia suficiente para sostener la conclusión de que la condición ha sido satisfecha.

(c) Determinaciones en ausencia del jurado cuando medie confesión de la persona acusada.-En casos ventilados ante jurado, toda la evidencia relativa a la admisibilidad de una confesión de la persona acusada será escuchada y evaluada por la jueza o el juez en ausencia del jurado. Si la jueza o el juez determina que la confesión es admisible, la persona acusada podrá presentar al jurado, y el Ministerio Público podrá refutar, evidencia pertinente relativa al peso o credibilidad de la confesión y a las circunstancias bajo las cuales la confesión fue obtenida. Otras determinaciones preliminares a la admisibilidad de evidencia también podrán considerarse en ausencia del jurado cuando los intereses de la justicia así lo determinen o cuando la persona acusada sea un testigo que así lo solicite.

(d) Testimonio de la persona acusada en determinaciones preliminares.- La persona acusada que testifica en torno a una cuestión preliminar a la admisibilidad de evidencia no queda por ello sujeta a contrainterrogatorio en cuanto a otros asuntos del caso. La declaración de una persona acusada sobre el asunto preliminar no es admisible en su contra salvo para propósitos de su impugnación.

(e) Valor probatorio y credibilidad.-Esta regla no limita el derecho de las partes a presentar evidencia ante el jurado que sea pertinente al valor probatorio o a la credibilidad de la evidencia admitida luego de la correspondiente determinación preliminar del tribunal.

En nuestro sistema de Derecho Probatorio el concepto de pertinencia es esencial. Por su parte, la Regla 403 de Evidencia, 32 LPRA Ap. VI R. 403, aborda lo relativo a la evidencia que, aunque pertinente es excluida por fundamentos de perjuicio, confusión o pérdida de tiempo. La regla lee:

Evidencia pertinente puede ser excluida cuando su valor probatorio queda sustancialmente superado por cualesquiera de estos factores:

a. riesgo de causar perjuicio indebido.
b. riesgo de causar confusión.
c. riesgo de causar desorientación del jurado.
d. dilación indebida de los procedimientos.

e. innecesaria presentación de prueba acumulativa.

La regla anteriormente citada responde a la imposibilidad de lograr la codificación de todas las posibles reglas de exclusión. Ernesto Luis Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales*, San Juan, Pubs. J.T.S., 1998, Tomo I, pág. 7. La discreción recogida en esta regla es para excluir evidencia a pesar de que sea pertinente y que no haya regla de exclusión aplicable. Ernesto Luis Chiesa Aponte, *Reglas de Evidencia Comentadas*, 1ra ed., Ediciones SITUM, 2016, pág. 75. A raíz de lo anterior, se trata de una regla que debe ser utilizada con mesura y cautela por los tribunales, pues el principio es que, toda evidencia pertinente es admisible, salvo que le sea aplicable una regla de exclusión. *Íd.* La Regla 403 de Evidencia, reconoce que el foro primario es el que se encuentra en mejor posición de llevar a cabo la tarea de realizar el balance entre el valor probatorio de la evidencia presentada y los elementos contenidos en la regla. Ernesto Luis Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, op. cit.*, pág. 9.

El Tribunal Supremo ha reconocido que el fundamento del peligro de causar perjuicio indebido, primer factor enumerado por la Regla 403 de Evidencia, es el factor más invocado. *Pueblo v. Ortiz Pérez*, 123 DPR 216, 228 (1989). El máximo foro judicial, al interpretar la equivalente Regla 19 de Evidencia (actual Regla 403), expresó que:

> Por supuesto, toda prueba es "perjudicial" en la medida que favorece a una parte y perjudica a otra, pero este no es el tipo de perjuicio al que se refiere la regla. En términos generales se trata de prueba que puede conducir a un resultado erróneo cuando se apela meramente -y aunque no únicamente- a los sentimientos y a la emoción. Hay que recordar, sin embargo, que particularmente en la litigación criminal en ocasiones es preciso recrear ante los ojos del jurado (sic) situaciones desagradables que deben ser legítimamente objeto de prueba. No toda evidencia que

pueda conmover el ánimo del jurado constituye materia a ser excluida.

*Íd.*

Sobre lo que constituye perjuicio indebido, el Tribunal Supremo señaló lo siguiente: "Perjuicio indebido se refiere más bien a evidencia cuyo valor objetivo es mucho menor al que puede recibir por parte del juzgador en virtud de factores, por ejemplo, emocionales". *Pueblo v. Nazario,* 138 DPR 760, 779 (1995).

Por último, el profesor Chiesa Aponte también se ha expresado sobre el perjuicio a la parte contraria, exponiendo:

> Cuando el tribunal realiza el balance correspondiente entre valor probatorio y efecto perjudicial indebido, aparte de considerar el valor probatorio o fuerza intrínseca de la evidencia, debe también considerar la necesidad de la misma para el proponente, en el sentido de si cuenta con otro tipo de evidencia, sin el potencial de perjuicio indebido, para establecer lo que intenta probar con la evidencia en cuestión**.** Si lo mismo puede ser probado con otra evidencia claramente admisible, el balance puede inclinarse hacia la exclusión.
>
> Ernesto Luis Chiesa Aponte, *Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, op. cit.,* pág. 11.

Por su parte, el fundamento del riesgo de causar confusión, el profesor Chiesa Aponte expresa que es similar al fundamento del riesgo de causar desorientación del Jurado. Ernesto Luis Chiesa Aponte, *Reglas de Evidencia Comentadas, op. cit.,* pág. 79. Sobre dichos fundamentos, el profesor Chiesa Aponte expone que el riesgo de confusión usualmente se refiere a que la evidencia es demasiado complicada, de forma tal que su valor probatorio no compensa la confusión que se crea. *Íd.*

## -D-

Una presunción es "una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción". Regla 301 (a) de Evidencia, 32 LPRA Ap. VI. La presunción se considera

controvertible cuando la ley permite presentar evidencia para destruirla o rebatirla. Es decir, cuando la ley permite "demostrar la inexistencia del hecho presumido". Regla 301(b) de Evidencia, 32 LPRA Ap. VI.

En las acciones de naturaleza civil, la parte contra la cual se establece la presunción tiene la obligación de ofrecer evidencia para demostrar ante el juzgador la inexistencia del hecho presumido. Si no ofrece evidencia, el juzgador entonces deberá aceptar la existencia de éste. Regla 302 de Evidencia, 32 LPRA Ap. VI; *Ferrer v. Conagra Foods P.R., Inc.*, 175 DPR 799, 813-814 (2009). *Pueblo v. Vázquez Méndez*, 117 DPR 170, 176 (1986).

Esto significa que mientras no se destruya el hecho presumido, éste prevalece en contra de la parte promovida con todas sus consecuencias. Ahora bien, si la destruye o controvierte, a la parte favorecida por la presunción todavía le asiste el derecho a probar el hecho que había sido presumido. *Vincenti v. Saldana, supra*, pág. 52.

*-E-*

Nuestro Código Civil señala que, la filiación puede establecerse durante o luego del matrimonio. Por su parte, el Art. 568 del Código Civil nos dice que, se presume la paternidad cuando los hijos nacen dentro del matrimonio o posterior a 300 días siguientes a la fecha de la disolución del matrimonio. Además, establece que, el reconocimiento voluntario por sí solo también crea una presunción. Art. 568, Código Civil, 31 LPRA sec. 7122. No obstante, las presunciones anteriormente mencionadas aceptan prueba en contrario siempre que se demuestre la imposibilidad de la paternidad o maternidad dentro del término por el Código Civil. Art. 569, Código Civil, 31 LPRA sec. 7123.

Por su parte, nuestro ordenamiento jurídico otorga legitimación para la impugnación de la filiación al presunto padre,

la madre, el padre por vínculo genético y el padre intencional comitente. Art. 573, Código Civil, 31 LPRA sec. 7127. Este tipo de impugnación debe presentarse en un plazo de caducidad de un año desde que "el impugnador tiene indicios o conoce hechos que crean una duda verdadera sobre la inexactitud de la filiación". Art. 575, Código Civil, 31 LPRA sec. 7129.

Por constituir un término de caducidad es importante establecer que, la caducidad es la decadencia o la pérdida de un derecho ocasionada por el incumplimiento de una formalidad o condición exigida por ley en un plazo determinado. Por lo que, la pérdida del derecho es automática por no ejercitarse en el transcurso del plazo establecido. *Rivera Marrero v. Santiago Martínez,* 203 DPR 462, 478-479 (2019). Los términos de caducidad evitan que la incertidumbre perdure en determinada relación o situación jurídica. *Id.* Una vez trascurrido el término de caducidad, la acción de impugnación de paternidad desaparece. Por lo que, el presunto padre legal no podrá ejercer acción alguna para impugnar su paternidad. *Bonilla Ramos v. Dávila Medina,* 185 DPR 667, 675-676 (2012).

### -III-

Discutiremos el primer, segundo, tercer y quinto error en forma unida al versar sobre un mismo asunto.

La procreación es la fuente primaria para establecer el nexo filial. Sin embargo, como el hecho biológico en ocasiones es de difícil constatación, nuestro ordenamiento estableció presupuestos fácticos que dan lugar a los efectos jurídicos de las presunciones filiatorias. L. Díez-Picazo y A. Gullón, *Sistema de Derecho civil*, 7ma ed., Madrid, Ed. Tecnos, Vol. IV, 1997, pág. 252. Así, actualmente existen tres clases de filiación: la matrimonial, la extramatrimonial y la adoptiva.

En cuanto a la *filiación matrimonial,* al momento de nacer la

menor KFMR los Arts. 113 y 114 del Código Civil de 1930, consignaban dos presunciones: (1) "Son hijos legítimos los nacidos después de los ciento ochenta días siguientes a la celebración del matrimonio y antes de los trescientos días siguientes a su disolución"; (2) "Igualmente es legítimo el hijo nacido dentro de los ciento ochenta días siguientes a la celebración del matrimonio, si el marido no impugnare su legitimidad". La filiación matrimonial comprende, además, a los hijos nacidos antes del matrimonio de sus padres. Los Arts. 119 a 122 del Código Civil de 1930 permitían que, el subsiguiente matrimonio de los progenitores convierta la filiación inicialmente extramatrimonial en una filiación matrimonial para todos los efectos, y respecto a todas las personas.

Estos presupuestos se comprueban con la inscripción registral del nacimiento de la menor y del matrimonio de los padres en el Registro Demográfico de Puerto Rico. Tal inscripción constituyó un título de legitimación del estado civil de la hija matrimonial, sin perjuicio de que pudiera ser impugnado judicialmente. R. Ortega-Vélez, *Compendio de Derecho de Familia*, San Juan, Publicaciones JTS, 2000, T. I, Cap. VII, pág. 391.

Si bien existen dos maneras en que se adquiere el estado o condición de hijo —desde el momento mismo del nacimiento o desde el momento del reconocimiento— no hay duda de que una vez adquirida tal condición se trata de "un mismo y único grupo: hijos". *Almodóvar v. Méndez Román*, 125 DPR 218, 251 (1990).

Como señala el profesor Raúl Serrano Geyls, "[l]a persona nacida del matrimonio de sus padres tiene establecido presuntamente su estado de hijo sin necesidad de gestión alguna de reconocimiento por sus padres". R. Serrano Geyls, *Derecho de familia de Puerto Rico y legislación comparada*, San Juan, Facultad de Derecho de la Universidad Interamericana de Puerto Rico, 2002,

Vol. II, pág. 310.

En virtud de esto, queda claro la existencia de *dos presunciones de paternidad con iguales efectos*, la que establecen el Arts. 113 y 114 del Código Civil de 1930 que, consiste en suponerlos hijos del marido, y la presunción derivada del reconocimiento que los supone hijos del reconocedor. *Castro v. Negrón*, 159 DPR 568, 586 (2003). En el presente caso, la presunción surgió por virtud de los Arts.113 y 114 del Código Civil de 1930. Estos artículos a manera de *investidura legal* crearon un estado de presunción filial entre la menor KFMR, y el señor Christian Fraguada Almena. *Tosado v. Tenorio*, 140 DPR 859, 863 (1996); *Moreno Álamo v. Moreno Jiménez*, 112 DPR 376, 379 (1982).

La parte apelante contrajo matrimonio con el señor Fraguada Almenas el 22 de agosto de 2005 y la sentencia de divorcio fue emitida en el 2008. La menor nació el 7 de septiembre de 2005, es decir, vigente el matrimonio entre el señor Fraguada Almenas y la parte apelante.

De lo anterior se colige claramente que, la menor quedó cobijada por la presunción de paternidad establecida en los Arts. 113 y 114 del Código Civil del 1930. La referida disposición invistió legalmente a la menor con el estado de hija del señor Fraguada Almenas.

Entre los presupuestos fácticos en la presunción de paternidad del señor Fraguada Almena sobre la menor KFMR, está la voluntad tácita del primero al estimar suya la hija nacida durante su matrimonio con su anterior esposa, la aquí parte apelante, y así dejarlo constar en el Registro Demográfico al inscribir a la menor como su hija. *Moreno Álamo v. Moreno Jiménez, supra*, pág. 380.

En aquel momento quedó establecida la presunción de

paternidad sobre la menor en la necesaria concurrencia de los siguientes elementos: quedó acreditada la maternidad y un vínculo matrimonial entre la madre y el hombre a quien se le atribuye la paternidad; el nacimiento ocurrió dentro de los 180 días siguientes a la celebración del matrimonio, pero antes de los 300 días de este haber sido disuelto; y el marido no cuestionó la paternidad de la menor. *Almodóvar v. Méndez Román, supra*, pág. 236.

Por tanto, el presente caso trata sobre la efectividad de la presunción de paternidad cuando existe una impugnación contradictoria como consecuencia del reclamo de paternidad de un tercero, la parte apelada.

Como previamente indicamos, la presunción de paternidad opera como una investidura legal por razón del nacimiento mientras está vigente la unión matrimonial, y perdura su eficacia mientras no se presente prueba en contrario en los plazos de caducidad establecidos por el Código Civil.

Ahora bien, la política pública local consiste *en lo posible, de que la realidad biológica coincida con la realidad jurídica. Castro v. Negrón, supra*, págs. 581-582. Esto es, que las personas posean una filiación jurídica con aquellos que biológicamente sean sus padres. Su trascendencia no sólo se extiende al ámbito moral y patrimonial que afecta a la persona y a su familia, sino que, además, entraña un interés público y superior que interesa también al Estado. J. Castán Tobeñas, *Derecho civil español común y foral*, 9na ed., Madrid, Ed. Reus, 1985, T. 5, Vol. II, pág. 18. En definitiva, "la filiación es la nota de mayor jerarquía dentro del parentesco y portadora de las más importantes consecuencias jurídicas". Ortega-Vélez, *op. cit.*, pág. 388.

La Enmienda Decimocuarta dispone que ningún estado privará a una persona de su vida, libertad, o propiedad, sin un debido proceso de ley. Emda. XIV Const. EE. UU. Véase, *Troxel v.*

*Granville*, 530 U.S. 57 (2000). La cláusula provee protección contra la interferencia del gobierno con ciertos derechos fundamentales. Entre estos derechos fundamentales se encuentran la relación de los padres con sus hijos. *Id.*, pág. 66. El interés libertario en este caso – el de los padres cuidar a sus hijos y ostentar su custodia- *is perhaps the oldest of the fundamental Liberty interests recognized by this Court. Íd.* La Corte Suprema de los Estados Unidos Tambien dispuso: "[t]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a "better" decision could be made". *Íd.*, pág. 73.

Cónsono con lo anterior, en *Rexach v. Ramírez*, 162 DPR 130 (2004), el Tribunal Supremo de Puerto Rico señaló que, en el concepto "libertad" de la Enmienda Decimocuarta están incluidos, entre otros, el derecho a casarse, a establecer un hogar y a criar a los hijos. Por ende, la relación entre padres e hijos está protegida constitucionalmente. *Íd.*, pág. 428.

En *Sterzinger v. Ramírez*, 116 DPR 762, 777 (1985), el Tribunal Supremo expresó que "el derecho del padre [o la madre] a la compañía del hijo, aunque sea esporádica, no es mera derivación del bienestar del niño, sino parte también de derechos fundamentales que nacen de la paternidad [o la maternidad], de nociones de libertad y justicia que una sociedad sujeta a limitaciones constitucionales no puede ignorar del todo".

Debido a ello, el debido proceso de ley procesal exige que, todo procedimiento adversativo cumpla con ciertos requisitos, entre ellos el que, una parte tiene derecho a examinar la evidencia presentada en su contra. *Íd.*

Precisamente, a través de esta acción la parte apelada pretende controvertir la presunta paternidad del señor Fraguada Almenas. J. Lacruz Berdejo y otros, *Elementos de derecho civil:*

*derecho de familia*, 4ta ed., Barcelona, Ed. Bosch, 1997, T. 4, pág. 472. En las acciones de naturaleza civil, la parte contra la cual se establece la presunción tiene la obligación de ofrecer evidencia para demostrar ante el juzgador la inexistencia del hecho presumido. Si no ofrece evidencia, el juzgador entonces deberá aceptar la existencia de éste. Regla 302 de Evidencia, 32 LPRA Ap. VI; *Ferrer v. Conagra Foods P.R., Inc.*, 175 DPR 799, 813-814 (2009). *Pueblo v. Vázquez Méndez*, 117 DPR 170, 176 (1986).

Por tanto, le corresponde al apelado presentar prueba admisible para controvertir la presunción de paternidad que se estableció, luego de que la menor naciera vigente el matrimonio entre la parte apelante y el señor Fraguada Almena. Así pues, el foro apelado estaba impedido de dictar *Sentencia* y concluir que procedía la acción de impugnación de paternidad por el mero hecho de que existía un resultado de 99.99999% de la prueba de ADN, sin que antes se cumpliera con los requisitos evidenciarios para que la misma fuera admisible y pudiera ser considerada para fines de la acción. Además, debemos enfatizar en que esa no es necesariamente la única prueba que la parte que impugna la presunción de paternidad que pudiera ser pertinente para propósitos de la causa de acción. De igual manera, se le debe conceder la oportunidad a la parte que sostiene la presunción de paternidad a que aporte prueba para impugnar aquélla presentada por la parte promovente y/o para que se mantenga la aludida presunción. Lo anterior no sólo es un principio básico evidenciario, sino que garantiza el derecho a un debido proceso de ley de las partes.

En consecuencia, erró el tribunal al concluir que el apelado era el padre de la menor por el mero hecho de la existencia de un resultado de una prueba de paternidad, sin que se cumplieran con los rigores de autenticación, pertinencia y admisibilidad requeridos

por las Reglas de Evidencia. Corresponde que el tribunal sopese la evidencia admitida que en su día presenten las partes y determine finalmente la paternidad de la menor. Regla 110 de Evidencia, 32 LPRA Ap. VI.

Ello es así, puesto que el Tribunal Supremo expresó en *Peña v. Peña II,* 164 DPR 949, 959 (2005) que: "[u]n tribunal, enfrentado a un litigio donde se dilucida la custodia, patria potestad o las relaciones paternofiliales, **no puede actuar livianamente**". Por lo que, "debe contar con la información más completa y variada posible para resolver correctamente". *Íd.*

Finalmente, en cuanto al asunto señalado mediante el error número cuatro, el 5 de junio de 2024 el foro primario celebró una vista argumentativa sobre el asunto de la caducidad. Las partes tuvieron oportunidad de postular a favor, y en contra de sus respectivas posturas. El foro apelado aquilató la prueba presentada, y el 25 de junio de 2024 emitió dictamen mediante el cual concluyó que, la causa de acción fue presentada dentro del término dispuesto para impugnar la paternidad.

Tal determinación es final y firme e inapelable, constituye la ley del caso. *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 606 (2000).[2] En consecuencia, el error número cuatro no fue cometido.

*-IV-*

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, *revocamos* la sentencia recurrida, emitida por el Tribunal de Primera Instancia, Sala de Bayamón. Devolvemos el caso al foro primario para que celebre vista de impugnación de paternidad conforme a lo aquí dispuesto.

---

[2] "Más que un mandato invariable o inflexible, la doctrina recoge una costumbre deseable: las controversias sometidas, litigadas y decididas por un tribunal dentro de una causa deben usualmente respetarse como finales. De este modo, las partes en un litigio pueden, en lo posible, conducir su proceder en el pleito sobre unas directrices judiciales confiables y certeras". *Rivera Robles v. Insurance Co. of Puerto Rico,* 103 DPR 91, 94-95 (1974).

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones